## COMER & COMPANY *vs.* COATES & COMPANY.

1. As a general rule, a court of equity will not interfere at the instance of a general creditor, before judgment, to set aside a conveyance of property or a lien made by the debtor, on the ground of fraud in the creation thereof, or to enjoin the taking or disposing of the property thereunder.

2. The remedy by injunction, receiver, etc., conferred by the act of 1881, is against one who is a trader or against an existing firm or corporation, not against one who was a trader, but has ceased to be such before the remedy is sought. Previous fraudulent conveyances and liens will not give jurisdiction under the act of 1881 if the defendant has ceased to be a trader.

3. For the fraudulent selling, conveying or concealing of property by a debtor, or the creation of fraudulent liens with a view to avoid paying a particular creditor, the latter has a complete remedy by attachment.

4. The object of the act of 1881 was to give a new remedy for the benefit of creditors against an insolvent trader, firm or corporation, not to allow a debtor to injure some of his creditors by enjoining them. Under the facts of this case, the injunction should not have been granted.

December 12, 1882.

Debtor and Creditor. Equity. Injunction. Traders. Before Judge STEWART. Upson Superior Court. July Term, 1882.

Reported in the decision.

DENMARK & ADAMS, for plaintiff in error.

R. F. PATILLO; LANIER & ANDERSON; ALLEN & TISINGER; J. H. MARTIN, for defendant.

JACKSON, Chief Justice.

The complainants brought this bill against Allen, alleging that he is a trader, and has failed to pay the debt he owes them, which is an open account; and asking that certain deeds and liens held by other creditors, who are made defendants also, be set aside as fraudulent. In the meantime, the bill prays for an injunction restraining these co-defendants, Comer & Co., from enforcing their liens or using other property in their possession procured from Allen, and for a receiver to take possession of Allen's assets of all sorts. The receiver was not appointed, but the injunction was granted, and to the grant of this interlocutory injunction exception is taken in this writ of error. Other creditors are made co-complainants, none of whom hold liens of any sort upon any property of Allen.

1. It is quite clear, therefore, that complainants have no standing in equity for an injunction, unless they can

rest on the act of 28th of September, 1881. Code, 3149 (*a.*) to (*g.*); acts of 1881–2, p. 124; *Cubbedge & Hazlehurst vs. Adams*, 42 *Ga.*, 124, and following cases—where it is held that unless the creditor has reduced his debt to judgment, or has some lien on the property of his debtor, equity will not help him by injunction to interfere with the debtor's right to dispose of his estate.

2. Does this case come within the act of 28th of September, 1881?

It appears from the deposition of Allen, uncontradicted by any other evidence, that at the time the bill was filed, he was not a trader, but had ceased business as such for four weeks. So that the question meeting us at the threshold of the case is, does the act of 1881 contemplate an existing corporation, or an existing trader, as the defendant at whom its remedial process is aimed, or one who has been a trader in the past?

The first section seems to contemplate the trader engaged in his avocation of trade at the time the creditor would bring him into a sort of bankrupt court and shut up his business and administer his assets. It enacts: "In case any corporation, not municipal, or trader or firm of traders, shall fail to pay, at maturity, any one or more matured debts, payment of which has been demanded of such debtor and by him refused, and shall be insolvent, it shall be in the power of a court of equity, under a creditor's bill, to which one or more of the creditors, who have matured debts unpaid, shall be necessary parties to proceed to collect the assets, real and personal, including choses in action and money, and appropriate the same to the creditors of such trader, firm of traders, or corporation."

The payment of the debt must be demanded of *the trader*; and payment must be refused by *him*. *His* assets are to be collected and appropriated to *his* creditors.

The entire section contemplates, not one who has been in business as a trader, but one then in such business.

v 69—32

Section VI is still stronger and clearer on the same line. It enacts: "That any person or firm shall be considered a trader *who is engaged*, as a business, in buying and selling real or personal estate of any kind, or who *is* a banker, or broker, or commission merchant, or manufacturer, manufacturing articles to the extent of five thousand dollars per annum."

It will be observed that the section uses the present tense all the while. He must be a trader who "is engaged" in buying and selling real or personal estate, who "is" a banker or broker, etc., or commission merchant, or manufacturer "manufacturing" articles to the amount of five thousand dollars a year.

Section V provides that the judge may make a suitable allowance for the defendant for his support "during the pendency of the proceedings"—contemplating that his business is stopped by the proceeding in equity, and some allowance must be made for his maintenance pending the stoppage of that business and the bringing it to an end by appropriating all the rest of the assets to his creditors.

Section II vests in the chancellor the power to appoint receivers, grant injunctions, and take all proper steps to bring the matter to a final hearing.

Section III provides that other creditors may be made parties on sharing the expenses of prior litigation.

Section IV provides that, upon the appointment of a receiver, no creditor shall acquire any preference by judgment or lien under proceedings commenced after filing the bill, and all assignments and mortgages made after the filing of the bill shall be vacated.

Section VII provides that the judge may recommend the release of the defendant from further liability in his final judgment.

So that the scheme of the act evidently is to make persons, natural or artificial, who are engaged in business of certain kinds, pay their debts at maturity on demand,

or, on failure thereof, if insolvent, to close up that business and stop further imposition on the community. A penalty is put upon them if they fail to pay until they become insolvent. That penalty is, that equity will seize all their effects and administer their property while in life. If they have already ceased to transact business, then the penalty is paid already, and the act becomes inoperative.

Mark these words, "a trader or firm of traders," in the first section; certainly if. the firm has been dissolved, the act would not apply. It must mean a firm when the failure to pay and the insolvency have occurred, and when the bill is filed. If not, how long after dissolution can the firm be administered upon under the act? When will the assets cease to be firm assets? So in respect to a single trader. If he be not trading, a trader, at the time the bill is filed, where will you draw the line and terminate his responsibility under the act, and hunt up what had been his assets? Suppose partners change and firms become new, how long back are you to go upon the old firm, and bring in their assets, or run down their property?

In view of the difficulty of fixing on any time, the statute fixing none, within which the debtor falls within the act as a trader, it seems to us wiser and better to follow the plain words of the act, and to hold that the act means to confer on the court of equity this extraordinary power to administer while in life the lands and tenements, rights and credits, of a trader while he "is engaged as a business" in trading. Such certainly are the words of the act, and such seem to us to be its true spirit and intent. It is putting a trader in bankruptcy and relieving him from past debts, as far as state legislation can do so.

The line of reasoning in the cases of *Barnwell et al. vs. Wofford et al.*, and *Collins vs. Myers and Marcus*, decided at the September term, 1881,. of this court and the following term, fully accord with this ruling.

In the first case, it is said by the court, that "this act

appears to us to have been intended to authorize the marshalling the assets of one who is a trader and becomes insolvent, and to proceed to collect and appropriate the same to the payment of his debts;" and in the second case, it is also said that the complainant "must show that his debtor is a trader and is insolvent." In both cases the court say that the act should receive a strict construction, as it authorizes the stoppage of business and the administration of the assets and traders while in life. While those two cases went off .on other grounds than the point that the parties defendant were not then trading, there being allegations that they were, yet these opinions show the mind of the court at that time on this point, and more reflection, but confirms the view then expressed.

If the general assembly meant to include all who had been traders, how easy to have so said in the act, and to have specified the limit of time within which, after they had ceased to be such, this process could have reached them. It is after the bill is filed that by the act they are prohibited from making assignments and liens on their property. All existing liens made before the bill is filed are to be preserved. Section IV. If any of them be fraudulent, they must be otherwise attacked and annulled, if the attack upon them is not made until they cease to be traders. If still traders when the bill is filed, of course prior alienations and liens may be attacked as incidental to the power to collect and marshal the assets; but if that character of trading has terminated, fraudulent conveyances or liens will not alone give equity jurisdiction under this act.

3. In addition to this construction of the act of 1881, which shuts the door on these complainants under this act, and as the fact that none of them have liens on the property of Allen of any sort bars it against the relief equity could give prior to the act of 1881, we do not see why the remedy at law by attachment is not ample to furnish adequate relief. The Code, §3297, acts of 1873, p.

29, gives that remedy when the debtor sells, conveys or conceals his property, or threatens or prepares to do so; and the act of 1877, p. 20, Code 3237 (*a.*) extends the remedy by attachment to all fraudulent liens on his property made by the debtor. The subsequent provisions in sections of the Code 3298, 3299, 3300, 3301, provide how these attachments may issue, and regulate the proceedings necessary to enforce them.

This is a remedy at law, and it appears to us that it will reach any fraudulent assignments or liens which Allen has made to Comer & Co., with a view to avoid the payment of his debts, or any of them, and to cover all fraudulent liens which he may have made to anybody. 52 *Ga.*, 376; 63 *Ib.* 163. If there had been trouble in the way of this remedy in this case under the act of 1873, Code, 3297, as the purpose may have been to secure Comer & Co., rather than to avoid paying others, that difficulty, it seems, is removed by the act of 1877, Code, 3237 (*a.*) which embraces fraudulent liens.

4. In addition to the foregoing reasons why we think this injunction ought not to have been granted, it may be added, that the chancellor seems to have granted it on the cross-bill of Allen and rather for his benefit. The original bill itself was hardly sufficiently verified, and if all the allegations in the cross-bill on which it was granted be true, touching fraudulent conveyances and liens, it may well be doubted that Allen is insolvent. The great purpose of the act of 1881 was to help creditors to get at the debtor's property, if a trader and insolvent, rather than to help that debtor and trader. The effect of this injunction, it being granted at the instance of the debtor, and upon his cross-bill or answer in the nature of one, which is the same thing in effect, seems to us rather to be to help the debtor than to aid creditors. If so brought under the act of 1881, a creditor's remedial act, it would be turned into a remedy for the debtor. It would hurt the creditor who got his liens *before* the bill was filed, and

hardly helps the other creditors who had no liens at all. It must be made to appear that they would be benefited. *Barnwell et al. vs. Wofford et al.* and the lien creditor not injured wrongfully. We cannot see, taking all the facts of this case together, that such a result will follow from the grant of this injunction. Especially on the ground that the act of 1881 contemplates action against a trader while in business, aided by the other reasons above given, we conclude that the chancellor erred in the grant of this injunction, and reverse the judgment granting it.

Judgment reversed.