DUNHAM, BUCKLEY & CO. *et al. v.* CURTIS & FUTCH *et al.*

Where, upon a petition for injunction and receiver and to set aside an assignment, the petition being verified by one of the plaintiffs' attorneys " to the best of his knowledge and belief," a restraining order was granted and a temporary receiver was appointed, and at the interlocutory hearing a motion was made to dismiss the petition on the ground that the verification was insufficient, and the petitioners' attorneys offered additional affidavits for the purpose of verifying and which did verify most of the material allegations of the petition, the verification thus offered was sufficient to authorize the court to proceed with the hearing, and it was error to sustain the motion and dismiss the petition on the ground stated, it appearing that the presiding judge neither exercised nor attempted to exercise any discretion in the matter, but based his ruling solely on the ground that the additional verification was insufficient.                        *Judgment reversed.*

June 12, 1893. BLECKLEY, C. J., presided at the argument, but on account of providential cause did not participate in the decision.

Petition for injunction and receiver. Before Judge BUTT. Muscogee county. April 22, 1893.

The petition was on behalf of Dunham, Buckley & Co., Partridge & Richardson, and Everett, Ridley, Ragan Co., against Curtis & Futch. When presented it was not verified otherwise than by an affidavit of H. R. Goetchius of the law firm of Goetchius & Chappell, the plaintiffs' attorneys, " that to the best of his knowledge and belief the facts and allegations stated in the foregoing petition are true." Thereupon the judge granted a restraining order, appointed a temporary receiver, and issued a rule for the defendants to show cause at a time named, why a permanent receiver should not be appointed and a perpetual restraining order be granted. At that time both sides announced ready. Curtis, the

defendant served, moved to dismiss the petition because it was not properly verified. Before this motion was ruled on, the plaintiffs offered to amend and supplement the verification by three other affidavits and by certain documentary evidence. These having been read, the judge refused to allow the plaintiffs to strengthen the verification in any one or all of the methods proposed, ruling that any such additional verification would be insufficient.

The petition alleges the following: The plaintiffs are wholesale merchants, and in the line of their respective business sold and delivered certain goods to Curtis & Futch, a copartnership engaged in retail mercantile business, whereby they became indebted to plaintiffs in stated amounts. In August, 1892, J. A. Spain, H. A. Curtis and J. D. Futch formed a copartnership under the firm name of Spain, Curtis & Co., and engaged in the retail dry goods business. On January 23, 1893, this firm was dissolved and Spain sold his entire one third interest therein to Curtis and Futch for $2,500, who thereupon formed a partnership under the firm name of Curtis & Futch and entered in the same business at the same place and with the same stock, assuming all liabilities of Spain, Curtis & Co., among which was the debt due to Partridge & Richardson. Curtis & Futch purchased directly from the other two plaintiffs the goods from which arose the indebtedness to them. On April 8, 1893, Curtis & Futch were insolvent and dissolved copartnership, and the entire assets of said firm were transferred and assigned to Curtis in trust that he should pay all the outstanding liabilities of the firm, which he assumed and undertook to do, including the debts due plaintiffs. Said assignment in no wise conformed to the statutes in such cases made and provided, in that there was attached no schedule of assets and of creditors and liabilities. Curtis immediately on taking pos-

session mortgaged the entire stock of goods, which constitutes the most if not all of the assets, to the Fourth National Bank of Columbus for $5,150, $3,000 of which is alleged to have been borrowed by Curtis from the bank on April 8, 1893. At the same time, immediately on the dissolution and seizure of the assets by him, he executed a mortgage thereon to J. L. Willis, attorney at law, for $500 alleged to be for fee due Willis for services rendered and to be rendered by him as attorney touching said assignment and the transactions connected therewith. Having taken possession of the assets under said transfer and assignment, Curtis at once proceeded and still continues to sell and dispose of the same at the same place, being now engaged in the business of a trader in selling and disposing of the goods. In said transfer and assignment an interest and trust was reserved to Futch, to wit, that Curtis was first to pay him $2,500 out of the assets, which were already insufficient to pay the indebtedness of the firm. On receiving that sum (it being a part of that borrowed from the bank) Futch left Georgia, and his whereabouts is unknown to plaintiffs. They charge that the transactions between the firm of Curtis & Futch and its members were with the intent of defrauding its creditors. Dunham, Buckley & Co. believe and charge that the goods so purchased from them were purchased with the intent of defrauding them, and with no intention of paying for the same, that a large part of the goods are still in the storehouse, and that, the sale being void for fraud, the title to the same never passed to Curtis & Futch, or either of them; and in addition to other remedies, Dunham, Buckley & Co. pray that such of their goods as are still in the storehouse be decreed to be their property and be delivered to them. The defendants are insolvent. Curtis has given no bond as assignee, refuses to acknowledge himself as such, but assumes to

be absolute owner of the assets, and is disposing of them for his own benefit and without regard to the rights of plaintiffs and other creditors. In one week, by mortgage and otherwise he has incumbered and disposed of the stock to a large part of its value, and unless enjoined by this court, all of the assets will be out of the reach of plaintiffs and other creditors and they will be remediless. The claim of Partridge & Richardson is past due, and payment of it has been demanded of Curtis and refused. Then follow the waiver of discovery and the prayers of the petition.

The matters offered as additional verification were:

(1) Affidavit of T. J. Chappell, attorney for plaintiffs: The facts stated in the petition, so far as they concern his own act and deed are true, and so far as stated on the act and deed of others he believes them to be true. The firms of Spain, Curtis & Co. and Curtis & Futch were formed and dissolved substantially as stated in the petition. At the time of granting the rule *nisi* Curtis was in business, as stated, in Columbus. Deponent has inspected the original note and mortgage given to the bank, and the same is as stated in the petition, and the note is due on demand. He here tenders to the court the books and papers of defendants, showing the amounts due plaintiffs to be as stated in the petition, and showing the assets and liabilities of defendants; also, the city tax returns of Curtis & Futch, dated February 1, 1893, wherein they stated the value of their merchandise to be only $8,000. Deponent has inspected the records of the county, and finds thereon a mortgage made to J. L. Willis, attorney at law, on April 8, 1893, for $500. Deponent has in his possession and here presents to the court a mortgage on said stock to George P. Swift, made on April 8, 1893, for over $780; also, original notice of dissolution of Curtis & Futch, and the newspaper containing the same. He has seen of record the con-

tract of dissolution of Spain, Curtis & Co., and has given
notice to defendants to produce the original contract of
dissolution referred to in the petition, and all the books,
accounts and papers of Spain, Curtis & Co., Curtis &
Futch and H. A. Curtis, pertaining to the business; also,
notice to J. L. Willis, defendants' attorney, to produce
the mortgage in his favor, and to the bank to produce
its note and mortgage, and to the temporary receiver
to produce the books and papers of defendants; and
C. E. Battle, attorney for defendants and the bank, has
now in court, in response to said notice, the original
note and mortgage due the bank, and the receiver has
now in court the books and papers of defendants. De-
ponent verily believes all of the facts stated in the peti-
tion to be true. The plaintiffs live over five hundred
miles away and in other States, except Everett, Ridley,
Ragan Co., who live in Atlanta, and it has been impos-
sible to have had them here or to get their affidavits to
the bill in time to have sought the remedies asked.
Goetchius who swore to the bill is out of Georgia and is
not accessible at this time, and his affidavit here pre-
sented is in connection with the case.

(2) Affidavit of Goetchius: As attorney for Dunham,
Buckley & Co., he called on H. A. Curtis on April 11,
1893, and presented their account to him and asked a
settlement of it or that it be secured. Curtis stated
that he was unwilling to secure it; that he had bought
out Curtis & Futch and assumed all liabilities of that
firm, and had no money to pay them and would have to
rely on trade growing better this spring before paying
same; that he had also assumed the liabilities of the
firm of Spain, Curtis & Co., which had previously sold
out to Curtis & Futch; that he had borrowed the money
from the Fourth National Bank of Columbus with
which to buy out Futch, and on April 8th had exe-
cuted a mortgage to that bank for about $5,100; that

part of this mortgage was for a debt already owing the bank by the old firm; that he received $3,000 in cash from the bank and paid it over to J. D. Futch who had retired from the business; and that he had also executed a mortgage to George P. Swift for about $700, and a mortgage to J. L. Willis for $500. Either Curtis or Willis (deponent cannot recall which one) stated to him that this $500 mortgage was for attorney's fees. On April 12, 1893, deponent presented to Curtis the accounts of Partridge & Richardson and demanded payment. Curtis said he had no funds with which to pay the same and was unable to pay his indebtedness and would have to ask an extension of payment; that he had written his creditors and asked extension of time. On April 15, 1893, J. L. Willis, attorney, stated to deponent that Curtis was having stock taken of his stock of merchandise. Deponent asked said attorney if it was for the purpose of making a proposition to creditors; and in reply the attorney stated that the parties assisting in taking the stock, representatives of two creditors, were doing so for the purpose of ascertaining what proposition the creditors could make to Curtis for a settlement of their debts. Deponent believes and has undoubted cause for believing that said two parties who were taking stock at the request of Curtis, were Schiff and Dawson, traveling salesmen, the former representing Witz, Biedler & Co., a past due creditor of Curtis, and the latter representing Hood, Faulkner & Co., also a creditor of Curtis.

(3) Affidavit of J. A. Spain: In August, 1892, deponent, H. A. Curtis and J. D. Futch formed a copartnership under the firm name of Spain, Curtis & Co., and as such entered into the retail dry goods business in Columbus, each putting in $2,500 capital. On January 23, 1893, the firm was dissolved, deponent selling his entire one third interest to Curtis and Futch for $2,500,

they assuming all liabilities of the firm of Spain, Curtis & Co. Then they formed a copartnership and continued business under the firm name of Curtis & Futch. On April 8, 1893, the firm of Curtis & Futch dissolved; Futch sold out to Curtis, who assumed all liabilities and carried on the business at the same place until he was closed up on April 15th. Futch left Columbus on April 12th for Lake City, Florida. Before leaving he told deponent that Curtis gave him $3,000 after the dissolution. On April 15th A. Schiff informed deponent that at the request of Curtis he had examined the stock and lists of liabilities of Curtis, and that the former was not worth over $12,000 at the outside, and the liabilities run between $14,000 and $15,000. Schiff is a representative of Witz, Biedler & Co., one of the past due creditors of Curtis. Schiff left Columbus on April 15, 1893. He stated to deponent that from his investigation made at request of Curtis, he (Schiff) was confident said Curtis was insolvent. Schiff and Dawson took an inventory of the stock with the purpose of buying it out and paying off the mortgages thereon; and Schiff stopped further negotiation after the bill was filed on April 15th. Deponent has been in the dry goods business all his life, is experienced in book-keeping, and understands the books of a dry goods house. By permission of the receiver he examined the books of Curtis on April 17th in the storehouse, and took notice of the stock of goods. He found that the books and invoices of Curtis showed an aggregate indebtedness of Curtis, for himself and as assumed for Curtis & Futch and Spain, Curtis & Co., debts matured and unmatured, of $17,-689.21; and deponent would say from said books that Curtis's liabilities will aggregate the above amount. The books, accounts and other evidences of debt, as appears from the examination thereof, show an aggregate of $230, and from his knowledge of the parties owing

same he would say that about seventy-five per cent. of this amount could be collected. On examination of the bank book of Curtis, it being in the name of Curtis & Futch, it appears that on March 31, 1893, there was a balance to their credit of $142.02; on April 4th, there was a deposit of $80.07, and on April 5th, $83.12; and no more entries appear on said book. The check book of Curtis shows two checks were drawn on April 8, 1893, in favor of J. D. Futch, for $300 and $2,700. The last entry on cash book is April 8, 1893, and no money appears to have been paid out since that date. The sales book's cash sales show $185.30 total from April 10th to 14th inclusive (April 9th being Sunday), and no entry appears on cash book of this amount. In deponent's opinion said stock is not worth over $12,000 invoice prices, and it is a custom of merchants to ascertain values of stock from invoices.

(4) The books and invoices of the defendants then in court, showing the amounts owing plaintiffs, and also itemized bills of the same then in hands of plaintiffs and produced under notice served by defendant. Also, the original notes, mortgages and contracts referred to in the petition and affidavits, notices to produce which had been given by plaintiffs; and the original tax returns referred to in the affidavit of Chappell, showing the facts stated in reference to said writing to be true.

GOETCHIUS & CHAPPELL, for plaintiffs.

JAMES L. WILLIS, for defendants.