## BOSTON MERCANTILE COMPANY *et al.* v.
## OULD–CARTER COMPANY *et al.*

1. When proceedings have been begun under the Federal bankruptcy act of 1898, the operation of the insolvent traders' act ( Civil Code, §§ 2716–2722 ) is, as to the subject of the suit, suspended ; but in the absence of any proceeding in the United States courts, the State courts have jurisdiction to try all cases coming within the purview of the act last mentioned.
2. The petition was awkwardly drawn, but was sufficient to authorize the order granted, appointing a receiver and making the injunction permanent.
3. The affidavit of the attorney for the plaintiff in a petition for injunction and receiver, to the effect that he knows the recitals of fact in the petition to be true, is a sufficient verification of the petition.
4. The admission of relevant evidence at any stage of a case is never ground for a new trial. This is so though the party offering the evidence ( which consisted of affidavits) failed to comply with an order of the court requiring that all affidavits to be used as evidence be filed in the clerk's office a given number of days before the day set for the hearing.
5. Where at an interlocutory hearing of a petition for injunction and receiver, to which a demurrer has been filed, the whole case is heard together on the petition, demurrer, answer, and evidence, it is not error to refuse to allow the defendant to open and conclude the argument on the demurrer.

Submitted March 20, — Decided June 17, 1905.

Injunction and receiver. Before Judge Mitchell. Thomas superior court. January 27, 1905.

*M. Baum* and *L. W. Branch,* for plaintiffs in error.

CANDLER, J. The case laid by the petition is substantially as follows: The Boston Mercantile Company, a trading corporation, doing business in Boston, Thomas county, Georgia, is indebted to plaintiffs in named amounts, the debts being matured, unpaid, and unsecured, and amounting to more than one third of the unsecured indebtedness of the corporation, which is insolvent. Pay-

ment has been demanded and refused.    On January 13, 1905, W. Z. Brantley, C. P. McRae, Fred Feltham, and C. R. McRae, all stockholders of the Boston Mercantile Company, presented to the superior court of Thomas county a petition praying the court, for reasons therein set forth, to permit the surrender of the franchise of the Boston Mercantile Company, and for the appointment of a receiver to take and hold the assets of the corporation, so that they might be duly administered, and that the funds arising therefrom, if any, remaining after payment of creditors, be distributed among the stockholders as their interest might appear. The court accepted the surrender of the franchise and appointed a receiver as prayed.    On January 16, 1905, the petitioning stockholders appeared before the court and asked leave to dismiss their petition, "and upon said motion the court passed an order dismissing the petition and directing the receiver . . to surrender the assets to the petitioners in said petition," which was done. "The order passed upon the petition of said stockholders enjoined all creditors from proceeding in any manner to enforce their claims against said corporation, and required them to appear in this court and prove their claims and assert whatever legal rights they may have in the premises in the said proceedings." It was alleged that the surrender of the franchise of the corporation as set out left the assets which were in the hands of the receiver without any person legally qualified to administer them, and that there was "manifest danger of loss or destruction of same, or material injury to those interested in said assets." The stockholders of the Boston Mercantile Company are continuing the business of that concern as a partnership, under the name of the Boston Mercantile Company.    An indebtedness was alleged against this firm in the same amounts and on the same claims as those charged against the corporation in the outset of the petition.    It was alleged that the firm was insolvent, and that the amount due by it to the plaintiffs constituted more than one third of the unsecured debts of the insolvent firm.    The prayers of the petition were: (1) that a receiver be appointed to take and hold, subject to the order of the court, all the assets of the Boston Mercantile Company and of said insolvent firm of traders; (2) that the Boston Mercantile Company and said insolvent firm of traders be enjoined from selling or disposing of or incumber-

ing any of said assets; and (3) for judgment for the amounts alleged to be due, for general relief, and for process.  The defendants demurred to the petition, on numerous grounds, but the demurrer was overruled.  They also filed an answer in which the material allegations of the petition, were denied.  They denied the existence of any partnership composed of the stockholders of the Boston Mercantile Company, and averred that after the appointment of a receiver and the dismissal of the petition of the stockholders, the assets of the corporation were turned over by the receiver, not to the stockholders as individuals, but to the corporation through its president.  The court granted a restraining order, and appointed a temporary receiver.  At the hearing the evidence offered went mainly to the value of the assets of the Boston Mercantile Company in the hands of the receiver, and was quite conflicting.  There was no evidence of the existence of any partnership consisting of the stockholders of the corporation, nor did it appear that the stockholders as individuals had ever been in possession of the assets.  On the contrary, it appeared that the order of January 16, 1905, granted upon the request of the stockholders for leave to dismiss their former petition, directed " that the receiver be discharged, and that he turn over to the plaintiff, the Boston Mercantile Company, through its president, W. Z. Brantley, all of the property and assets of said corporation, and the keys of said store."  After hearing the evidence and arguments, the court passed the following order:   " Upon hearing had this day it is ordered, considered, and adjudged, that injunction issue as prayed, and that James M. Jones, Esq., be and he is hereby appointed permanent receiver and ordered to take charge of all the assets of the defendant.  It is further ordered that the receiver keep open the storehouse of defendant, and proceed to sell at retail the stock of goods, keeping a strict account of all sales made, and report same to the court.  Said receiver is authorized to employ only such assistants as are actually necessary to carry on the business, and pay the assistants weekly, taking their receipt for same as his vouchers."  The defendants except to this order, to the overruling of their demurrer, to the refusal of the court below to allow them the opening and conclusion of the argument on the demurrer, and to the admission of certain evidence over their objection.

1. An important question raised by the demurrer is whether jurisdiction of the suit was in the State court or in the Federal court. It is urged that the passage of the Federal bankruptcy act of 1898 had the effect to suspend the operation of our insolvent trader's law; and that while the United States law is in force all proceedings to administer the estate of an insolvent trader must be brought in the Federal court under the bankruptcy law. That the Georgia insolvent trader's act is in some respects similar to a State bankruptcy law is undoubtedly true, and attention has been called by this court to these features of the act, in *Comer* v. *Coates*, 69 *Ga.* 491, and *Ryan* v. *Kingsbery*, 88 *Ga.* 361–389. In the first of these cases the court, through Chief Justice Jackson, in discussing the insolvent trader's act, said (p. 495): "It is putting a trader in bankruptcy and relieving him from past debts, as far as State legislation can do;" and upon the authority of this case and that of *Ryan* v. *Kingsbery*, supra, the United States circuit court, in the case of Carling *v.* Seymour Lumber Co., 8 Am. Bank. Rep. 29, held that the Georgia insolvent trader's act "is a kind of State bankruptcy law, putting a trader in bankruptcy and relieving him from past debts, as far as State legislation can do so, but its operation was suspended by the passage of the bankrupt act of 1898." This case, as well as that of *Comer* v. *Coates*, proceeds upon the idea that the insolvent trader's act contains that essential to a valid bankrupt law, a provision that the debtor shall be relieved from further liability on his then existing debts. How this idea could ever have obtained we are at a loss to understand. The only warrant for it is in the Civil Code, § 2722, which is as follows: "It shall be in the power of the chancellor, in his final judgment in the cases provided for, to express his opinion, if the facts authorize it, that from the facts as they have transpired during the progress of the cause, the defendant has honestly and fairly delivered up his assets for distribution under the law, and to recommend to the creditors of the defendant that they release him from further liability." In its last analysis this section means nothing more than that the judge shall have power to express his opinion in open court as to the good faith which the defendant has shown in surrendering his assets to the receiver, and to give

some benevolent but useless advice to the creditors. He may play Portia to the creditors' Shylock, reminding them that "the quality of mercy is not strained," and admonishing them: "Though justice be thy plea, consider this, that, in the course of justice, none of us should see salvation: we do pray for mercy; and that same prayer doth teach us all to render the deeds of mercy." But if, like Shylock, the creditors should fail to appreciate the beauty of this advice and should demand to the utmost the pound of flesh, the law of Georgia, unlike that of Venice, affords no avenue by which the unfortunate debtor can "get back at" his adversary. We have yet to learn of a case where even the scant power given by the code section has been exercised by any chancellor. In *Comer* v. *Coates*, supra, the question whether a debtor could be released from his debts by the exercise of the power conferred on the trial judge in the code section under consideration was not even remotely involved; so that the assertion of the learned Chief Justice that the insolvent trader's act is "putting a trader in bankruptcy and relieving him from past debts, so far as State legislation can do so," may well be considered as obiter, and not binding on this court; while the ruling of Judge Shelby in *Carling* v. Seymour Lumber Co., supra, which rests upon the authority of that case, may be dismissed from consideration, upon the ground that the learned jurist who delivered the opinion was simply misled by the dictum above referred to. The insolvent trader's act is unquestionably an insolvency law; but, as we have seen, it lacks one necessary element of a bankruptcy law, viz., a provision that after discharge the debtor shall be released from further liability on his debts. If, after proceedings have been begun under its terms, the Federal court obtains jurisdiction of the person or property of the defendant, either by a voluntary petition in bankruptcy or by a suit filed by other creditors of the defendant, there can be no doubt that the State court must yield jurisdiction. *Merry* v. *Jones*, 119 *Ga.* 643. But where the bankrupt court has never taken jurisdiction, we do not deem it to be necessary for creditors to go into the Federal court in preference to the State court. The law on this subject is fully and clearly stated in Collier on Bankruptcy (4th ed.), 531, from which we quote as follows: "No bankruptcy law since that of 1800 has

contained any provision declaring the effect of such a law on analogous State laws. That law, § 61, provided as follows: 'This act shall not repeal or annul, or be construed to repeal or annul, the laws of any State now in force, or which may be hereafter enacted, for the relief of insolvent debtors, except so far as the same may affect persons who are or may be within the purview of this act.' So far as it goes, the clause quoted is doubtless still the law. There was no need to insert it in subsequent statutes; for ere the act of 1841 was passed, the Supreme Court had delivered two epoch-making decisions, which settled the law on the subject: (1) that, when Congress has exercised its constitutional power to enact a uniform bankruptcy law, all existing State insolvency laws applying to the same persons are suspended, but (2) that, this power not being exclusive, State laws are valid and continue operative so far as they do not conflict with the paramount Federal law," — Sturges *v.* Crowningshield, 4 Wheat. 122; Ogden *v.* Saunders, 12 Wheat. 213.

2. It must be admitted that the petition was awkwardly drawn. No good reason appears why the stockholders of the Boston Mercantile Company, as a partnership, should have been made parties to the action. It seems that an effort was made by them to dissolve the corporation of which they were members, that they offered to surrender their franchise to the court, and that this offer was accepted. It is not necessary to discuss the question whether the existence of a corporation may be terminated in this manner — it is sufficient to say that after the attempt was made to kill the subject, restoratives were applied and it was brought back to life. In fact, it was never "entirely dead." According to the petition, the assets of the corporation were turned over to the petitioning stockholders, presumably in their individual capacity. If such were the case, the individuals would hold the assets merely in trust for the corporation. But the evidence shows that the assets were turned over to the corporation itself, through its officers, and the stockholders were not shown to have been connected in the slightest manner with the business or the assets in their individual capacity or as a partnership. The petition was also faulty in that it alleged two distinct debts to be due to the plaintiffs by two distinct legal entities — one the Boston Mercantile Company, a corporation, and

the other the Boston Mercantile Company, a partnership composed of named individuals. But construing the petition in the light of the undisputed evidence, it appears that the indebtedness sued on was due to the plaintiffs by the corporation; and that had all reference to the stockholders as a partnership been left out, the petition would have been good. The action was more against the property involved than the parties in whose possession it was; and as there was no dispute as to who the real debtor was or as to the justice of the debt, the granting of the injunction and appointing of a receiver by the court in the face of the demurrer setting up the technical misjoinder of parties will not be held error.

3. The Civil Code, § 4966, requires that "petitions for a restraining order, injunction, receiver, or other extraordinary equitable relief should be verified positively by the petitioner, or supported by other satisfactory proofs." This does not mean that only the petitioner may verify the petition, but that whatever verification is had shall be positive in character. Therefore, where, as in the present case, the attorney for the petitioner makes a positive affidavit that of his own knowledge the recitals of fact in the petition are true, the verification of the petition is sufficient. See *Dunham* v. *Curtis*, 92 *Ga.* 514.

4. It appears that by an order of court, passed prior to the hearing, all affidavits to be used as evidence were required to be filed at least three days in advance of the hearing, but that nevertheless certain affidavits were allowed in evidence over the objection of the defendants, which were filed on the day of the hearing, and of which the defendants had no notice or service. It does not appear, however, that the defendants asked for time in which to meet these affidavits. The admission of these affidavits is assigned as error. Clearly this was a matter within the sound discretion of the trial judge, and that discretion will not be controlled unless it is shown to have been abused. No such showing was made in this case. *Electric R. Co.* v. *Savannah R. Co.*, 87 *Ga.* 261.

5. Error is also assigned upon the refusal of the court to allow the defendants' counsel the opening and conclusion of the argument on the demurrer filed to the petition. It appears that the demurrer was considered at the interlocutory hearing, along with

the evidence introduced, and that the plaintiffs were allowed to open and conclude on the case as a whole. We see no error in this. Had the demurrer been heard separately at the proper time, upon the single question whether or not the petition made out a case to warrant the grant of the equitable relief sought, the defendants would undoubtedly have been entitled to open and conclude the argument; but where, at an interlocutory hearing, the entire case is heard, to determine whether the plaintiff is entitled to equitable relief, the demurrer has no special or favored standing as to the argument, and it is not error to grant the opening and conclusion to the plaintiff on the whole case.

The foregoing disposes of the material questions made by the bill of exceptions. Some of the grounds of the demurrer are not true in fact; as, for instance, those which raise the point that the petition does not allege that the defendants are insolvent, and that it fails to show that the plaintiffs own one third of the unsecured debts of the insolvent corporation. Further comment upon these points is of course unnecessary. A careful examination of the entire record convinces us that the judgment of the court below should not be disturbed.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*