## DANIEL *et al. v.* JONES *et al.*

1. The superior court has jurisdiction of an equitable petition filed by a member and certificate-holder of a fraternal benefit association chartered by the superior court, in behalf of himself and of all others similarly situated, against such association, for the purpose of having it placed in the hands of a receiver to conserve the property of the association, alleged to be going to waste on account of the illegal removal of two of the executive officers of the association by the parent society, and the refusal of the other three to act, and to keep it a going concern until other officers can be legally elected to transact the business of the association according to its charter and by-laws.

(*a*) The superior court was not deprived of such jurisdiction by the act of the General Assembly approved August 17, 1914 (Acts 1914, p. 99 et seq.), which provides that no application for injunction against, or proceedings for the dissolution of, or the appointment of a receiver for any such domestic society or branch thereof shall be entertained by any court in this State unless the same is made by the attorney-general; inasmuch as the act of 1914, in section 29, expressly excepts from its operation grand or subordinate lodges of Odd Fellows.

(*b*) No objection having been raised in the court below to the constitutionality of the exception in the act above recited, such objection will not be considered by this court.

(*c*) Nor is the superior court without jurisdiction of the case for the alleged reason that the defendant is an insurance company or association, and must be chartered by the Secretary of State; it appearing that the defendant is a fraternal benefit association.

2. The allegations of the petition are sufficient to bring the case within the jurisdiction of a court of equity; and the trial judge on an interlocutory hearing did not err in making an order restraining the defendants from certain acts complained of, nor in appointing receivers for the purposes therein stated, subject to the further orders of the court.

3. A court of equity has no jurisdiction in this State to dissolve a corporation. The Civil Code (1910), §§ 2238 et seq., and acts amendatory thereof, provide how public and private corporations may be dissolved.

(*a*) But where some of the officers of a corporation have been suspended by a "subcommittee of management" claiming to have authority to suspend, and other officers refuse to act in the management and control of the corporation, a court of equity has jurisdiction in a proper case to appoint a receiver to conserve the assets of the corporation, alleged to be going to waste, and keep it a going concern, and to grant an injunction until other officers can be legally elected to conduct its affairs according to its charter and by-laws.

FEBRUARY 28, 1917.

Injunction and receiver. Before Judge Bell. Fulton superior court. May 4, 1916.

Alfred D. Jones brought an equitable petition against the District Grand Lodge Number 18 of Georgia, Grand United Order of

Odd Fellows in America, of the State of Georgia, the same having been incorporated by the superior court of Fulton county, and alleged substantially as follows: This petition is on behalf of the plaintiff and all others similarly situated, or who may be interested by reason of being Odd Fellows and members of the corporation, or who may have financial interest therein. Plaintiff is a member of a certain named lodge of the order, and holds "a death benefit certificate for $500.00, and holds a death benefit certificate for $200.00 in Atlanta Household of Ruth No. 1286, and is a member both of the order of Odd Fellows and an inmate of the Household of Ruth." The defendant was incorporated for social, educational, and charitable purposes. It has no capital stock, but its revenue arises from dues, initiation fees, and donations. It is provided by its charter that it shall be governed by an executive committee which shall constitute a board of directors authorized and empowered to manage and conduct the business of said corporation within the meaning of the object and constitution of the Grand United Order of Odd Fellows in America, and in accordance with the rules and by-laws and regulations enacted by the members of the corporation through their representatives in annual communication assembled. The board of directors, by the provisions of the charter and the constitution and by-laws which have been adopted by the District Grand Lodge No. 18 of Georgia, are the District Grand Master, the Deputy Grand Master, the District Grand Secretary, the District Grand Treasurer, and the District Grand Director. These officials, by virtue of their offices to which they are elected by the representatives of the various subordinate lodges of Georgia duly assembled in biennial communications, became ipso facto the executive committee to manage the defendant corporation. Until January 15, 1916, the following were the officers of the defendant, having been duly elected at the biennial communication in August, 1915, and they were ex officio the executive committee in charge of the affairs of the defendant corporation, and were the only officers having any power to control the assets of the corporation, and without those officers the corporation would be entirely without management, to wit: B. S. Ingram, District Grand Master; J. M. Pitts, Deputy District Grand Master; B. J. Davis, District Grand Secretary; J. C. Styles, District Grand Treasurer; William Decker Johnson, District Grand Director.

Under the laws of the Grand United Order of Odd Fellows in America there is a subcommittee of management, being a corporation under the laws of the State of Pennsylvania, its corporate name being "Subcommittee of Management." The ones constituting the subcommittee of management are the ones (officials) occupying the position in the Grand United Order of Odd Fellows in America, as follows: Grand Master, Deputy Grand Master, Grand Secretary, Grand Treasurer, and five Grand Directors. The subcommittee of management, undertaking to act in accordance with the authority claimed by them under the laws and usages of the order, did, on January 15, 1916, suspend B. S. Ingram, the District Grand Master of the Georgia Lodge No. 18, and B. J. Davis, District Grand Secretary of the lodge, for the period of one year. The subcommittee also passed an order reciting that "a state of anarchy" existed in the State of Georgia in the affairs of District Grand Lodge No. 18, and "revoked the charter, dispensation, and warrant of said District Grand Lodge No. 18." Under the laws and usages of the order of Odd Fellows herein referred to, the only right to maintain a district grand lodge is under the authority of the Grand United Order of Odd Fellows in America, which, through its authorized agencies, grants a dispensation or warrant for such district grand lodge in each State or territory having the requisite number of lodges, to wit, three or more. Under the laws and usages of the national order, which is composed entirely of colored men, the decisions, rulings, and opinions of the subcommittee of management in all matters coming before it are final, and there is no appeal therefrom within the order. By an endowment feature of the order each male Odd Fellow paid 25 cents per month, which entitled him to a graduated policy according to the number of years he had paid, until he reached a maximum of $300; and later it was determined that each male Odd Fellow should pay 50 cents per month, which entitled him to a graduated policy, reaching after payment of ten years to $500, payable to the beneficiary upon his death. The two classes of outstanding policies are outstanding obligations against the defendant. By and under the usages of the national order there is an affiliated branch called the Household of Ruth, which is under the subcommittee of management referred to above. The Household of Ruth was organized largely for such colored women as might

desire to belong to it, although men were permitted to be members, provided they were members of the original order. The District Grand Lodge of Georgia undertook to provide an endowment feature for the members of the Household of Ruth who were in the jurisdiction of Georgia; and the members thereof were entitled, upon certain payments, to benefits ranging in amounts to a maximum of $200. There are about thirty thousand members of the District Grand Lodge No. 18 of Georgia, and about twenty thousand members of the Household of Ruth, the latter not being members of the District Grand Lodge No. 18. Every male member of the order of Odd Fellows is compelled to be a beneficiary of the Endowment Bureau, and no man can be a member of the Household of Ruth who is not also a member of a subordinate lodge under the jurisdiction of Georgia. All of the fifty thousand members of this order in the respective branches thereof have paid money to the District Grand Lodge No. 18, for the purpose of being entitled to a death benefit certificate payable to the beneficiary designated, etc. When the endowment feature was organized, the officials constituting the executive committee were compelled to begin without resources whatever, "and, by the skilful management and strict observance of business rules, the District Grand Lodge No. 18 has accumulated, from the sources referred to, assets in excess of $600,-000.00, consisting of real estate, stocks, bonds, etc., which constitute a trust fund of which the fifty thousand members in Georgia are beneficiaries.

Davis and Ingram claim that their suspension is illegal and without authority; and plaintiff claims that the withdrawal of the dispensation by which the District Grand Lodge No. 18 of Georgia operates is illegal, and is advised that the executive committee also claims that the withdrawal of the charter of the District Grand Lodge No. 18 of Georgia is illegal. Under the order of the subcommittee of management (provided it is effective and valid), there is no District Grand Lodge of Odd Fellows in Georgia, and there is no executive committee, and there are no officials of the chartered corporation, and no provision for the conservation of the large assets of the corporation, nor is there any method provided for the reception of the funds being received by the District Grand Lodge No. 18 from all over the State of Georgia. Profert is made of the charter, constitution, and by-laws of the District Grand

Lodge No. 18. There is no method, under the present status, for the appointment of anybody by the Order of Odd Fellows to take charge of the assets; and the only possible way by which the assets can be conserved, and either officially distributed to the cestuis que trust, or utilized as a going concern, if the contention of the executive committee and the plaintiff be correct, is for the court acting as a court of equity to intervene. It would be highly beneficial to the members of this order in Georgia, as well as to the members of the colored race, that the District Grand Lodge be preserved as a going concern and be allowed to effectuate its beneficial purposes, which provide for the maintenance, after death, of those who are dependent upon its members. The intervention of this court will preserve and conserve the interests of everybody, etc. The five members of the executive committee have well and faithfully managed the affairs of this corporation, and they were chosen by the various subordinate lodges of Georgia representing every member in Georgia, to occupy this fiduciary relation to the corporation. They understand its affairs and are best acquainted with its management; and if the contentions of the members who oppose the dissolution of the organization, and oppose the order of the subcommittee of management are successful, their continuance in office would best serve all parties concerned. About one fifth of all the members of this order in the United States live in the State of Georgia, and they have no representation on the subcommittee of management. The latter has no interest whatever in an official way, and the order outside of Georgia has no interest as an order in any of the assets described. The assets, which belong exclusively to the members in Georgia, are more than all of the assets of the order outside of Georgia combined. A failure to pay dues for a certain length of time causes a lapse of the death benefit certificate, with loss of all the payments which have been made thereon. The plaintiff therefore prays that the court pass such order as will allow a continuance of payments by the various members, of which appropriate account shall be kept and until it be determined whether the action of this subcommittee of management is legal in withdrawing the charter. While the plaintiff contends that the action of the subcommittee of management is illegal, even as applied to the District Grand Lodge of Odd Fellows, at the same time he avers that it is impossible for the subcommittee of manage-

ment of Pennsylvania to in anywise withdraw a charter granted by the superior court of Fulton county to the District Grand Lodge No. 18 of Georgia. The plaintiff was employed by the executive committee, at a salary of $900 a year, as District Grand Medical Examiner, for a period of two years, and the employment was within the power of the executive committee, the term of employment expiring September 1, 1917; and the effect of the order of the sub-committee of management is to deprive him of this contract right to the extent of the damage he names. He prays, that the members of the executive committee be appointed as temporary receivers, and be authorized to conduct the business of the corporation as heretofore conducted by them; that, until further ordered, those making payments shall not be deprived, by lapse or otherwise, of the benefits to which they are entitled under the certificates, but their rights be preserved in the assets until the court shall otherwise order; and that the court grant such other protective orders as will protect the various cestuis que trust, etc.

The plaintiff, with others who were made parties plaintiff and by intervention adopted the petition as their own, amended by alleging the correct name of the corporation to be "The District Grand Lodge No. 18, Grand United Order of Odd Fellows of America, Jurisdiction of Georgia." They also amended the prayers by asking that the court appoint a temporary receiver to take charge of all the assets of the defendant and hold them until further order; that the court appoint a permanent receiver to take charge of the assets of the defendant and hold and control them until final decree to distribute these assets as justice and equity may demand; and that the defendant, its agents and servants, be restrained and enjoined from interfering with the custody and control of the receivers to be appointed, and from interfering with the assets of the corporation, etc.

T. C. Strickland, A. W. Russell, members of Atlanta Lodge No. 5465, District Grand Lodge No. 18 of Georgia, G. U. O. O. F. in A., and others filed a motion for themselves and as representatives "of all the members of said lodge in good standing," alleging as follows: They are necessary and proper parties defendant, because they are beneficially interested and are representatives of a numerous class of persons so interested in the property and assets which are the subject-matter of this suit. The suit as it now stands is

a collusive one and a fraud upon the court and upon the beneficiaries of the property. The plaintiff and the persons appointed by the court as temporary receivers, to wit, B. S. Ingram, J. W. Pitts, B. J. Davis, J. C. Styles, and William Decker Johnson, have a common interest in the proceedings, and there is no real party defendant, and the persons just named have fraudulently colluded to illegally perpetuate themselves in control of the property and assets of the corporation. The District Grand Lodge accepted both its original and amended charter and acted under the same recognized authority of the laws and constitution of the Grand United Order of Odd Fellows in America. Article 3, section 2, of the last-named constitution reads as follows: "The S. C. M., the Executive Branch of the Order, shall have exclusive control of the management, government, and administration of the business affairs of the Order, with the enforcement of its laws, and with the execution of its purposes generally." Acting under its authority as set out in the constitution and laws of the National Order, the Subcommittee of Management did, on the 15th day of January, 1915, pass an order as set out in the petition, suspending from the order, for the space of twelve months, Ingram and Davis, after finding them guilty of contempt, etc. Movants show that they have a good legal defense to this suit, based upon the facts herein set out, and on other facts not pertinent to the motion; that they will present formal answers setting out the defense in formal manner on the day set for hearing the rule nisi, etc.; that when they become parties of record they will pray the court to vacate its orders inadvertently rendered, appointing temporary receivers, and will ask the appointment of a conservator or trustee to hold and care for the property until the Lodge can act; that in the meantime the receivers be required to execute a bond with good security, conditioned as the law requires, in the sum of $50,-000.00; that movants be made parties defendant, with right to plead, answer, and demur, etc.

The court made an order granting the movants leave to be and appear at the hearing to show why they should not be made parties, and to present their formal answer. At the hearing of the rules the movants were made parties to the case, the court reserving the right thereafter to assign them as parties plaintiff or defendant as the court might determine, with the right of demurrer and answer

reserved to any other parties. The defendants filed an answer admitting some of the allegations of the petition and denying others. The plaintiffs filed a response, alleging certain facts and reasons why the movants should not be made parties plaintiff, not necessary here to be set out. B. W. S. Daniel et al. also filed a motion to be made parties defendant in their own behalf and in the representative capacity stated.

The attorney-general of the State of Georgia appeared and moved the court in writing to abate and dismiss the action and all proceedings thereunder, and to discharge the receivers appointed by the court. As grounds for dismissal he alleged as follows: The District Grand Lodge No. 18, G. U. O. of O. F. of America, Jurisdiction of Georgia, is a fraternal benefit society, as declared by the laws of Georgia, and particularly by the act of the General Assembly for the regulation and control of all fraternal benefit societies, approved August 17, 1914. The insurance commissioner of Georgia, after examination, has advised petitioner that the defendant has failed to comply with the provisions of the act, and has not obtained any license from the Insurance Department of Georgia to do business in Georgia, or filed any reports with the department. The insurance commissioner has referred to petitioner for investigation and appropriate action, as authorized by the act, the petition of B. W. S. Daniel and others (which is attached), and has presented the facts relating to the examination, and the circumstances warranting the proceedings; and he is preparing to commence an action as provided by the act. Under the terms of the act, no such proceedings shall be commenced by the attorney-general against a fraternal benefit society, until after notice has been duly served on its chief executive officers, and until reasonable opportunity is given to said fraternal benefit society to show cause, on a date to be named in the notice, why such proceedings should not be commenced; and notices are being prepared by the attorney-general to be served, in accordance with the requirements of the act, upon all parties claiming to be chief executive officers of the fraternal benefit society. Under section 25 of the act no application for injunction against, or proceedings for the dissolution of, or the appointment of a receiver for any domestic society or branch thereof shall be entertained by any court in this State, unless the same is made by the attorney-general; and the attorney-general ap-

pears in the cause for the sole purpose of presenting to the court the facts herein alleged as cause for the abatement of the action and all proceedings thereunder; and he moves the court to dismiss the action and all proceedings thereunder, and to revoke the appointment of the temporary receivers heretofore appointed. This motion was amended by alleging, that the superior court was without authority to confer upon individuals or corporations the right and power to conduct any business of insurance, that the business being conducted by the defendants is without corporate authority, and that such rights and privileges can only be conferred by the State of Georgia, etc. Numerous answers and demurrers to this motion were filed.

Upon interlocutory hearing the court appointed James A. Branch receiver, under the direction as set out in the judgment, to take charge of all the assets of the defendant corporation, etc.; and the defendant and all its agents, servants, and all other persons were restrained from interfering with the possession, management, and control of the receiver of the property of the defendant, or with the certificate-holders in the payment of their dues and assessments to the District Grand Lodge.

To the above judgment of the court, B. W. S. Daniel, R. E. Pharrow, A. Graves, J. Q. Elias, W. J. Scott, J. D. Atkisson, T. C. Strickland, A. W. Russell, Morgan Williams, Willie Williams, J. O. Hembree, F. L. Willis, C. M. Brinson, J. J. Parker, J. D. Powell, D. R. Green, J. H. Dent, George Wheeler, E. J. Terrentine, J. H. Pitts, R. L. Goodrum, and Clifford Walker as attorney-general of the State of Georgia excepted.

*Clifford Walker, attorney-general, Dorsey, Brewster, Howell & Heyman, Anderson, Cann, Cann & Walsh, Brown & Randolph, Parker & Scott,* and *Parkham & Brookes,* for plaintiffs in error.

*Rosser, Slaton, Phillips & Hopkins, Brandon & Hynds,* and *C. P. Goree,* contra.

HILL, J. (After stating the foregoing facts.) While the record is extensive and intricate, and the arguments of counsel are equally so, happily the assignments of error are comparatively few, and the case when stripped of surplusage is confined to a few controlling issues. The facts of the case are liberally set forth in the foregoing statement.

1. The main question is one of jurisdiction. It is contended,

that under the allegations of the petition as amended, and under the evidence introduced on the trial, the defendant was a fraternal benefit society, and as such was and is subject to the laws of Georgia regulating fraternal benefit societies; and that under the laws of the State the superior courts have no jurisdiction of a cause praying for the appointment of a receiver or an injunction, except on the petition of the attorney-general of Georgia. It is also insisted, that under the allegations of the petition as amended, and under the evidence, the defendant was either an insurance company subject to the general insurance laws of Georgia, or it was a fraternal benefit society subject to the laws regulating such societies; and that in either event the superior court had no jurisdiction to entertain the subject-matter of the cause, or to appoint a receiver, or to grant an interlocuory injunction, because the jurisdiction to direct, manage, and control the defendant is by law vested in the insurance department of the State, and it appeared on the hearing that a petition had been filed and was then pending in the insurance department to investigate the defendant company.

In *Fraternal Life &c. Association* v. *Evans,* 140 *Ga.* 284 (78 S. E. 915), it was held that "The Civil Code, § 2869, provides that fraternal beneficiary orders or associations shall be governed by the provisions of the code relating to such orders or associations, and shall be exempt from the provisions of the insurance laws of the State." But it is insisted that the act of 1914 (Acts 1914, p. 99 et seq.) was passed to meet the decision in the *Evans* case, just cited. By section 25 of the act of 1914 (p. 119) it is provided that "No application for injunction against, or proceedings for the dissolution of, or the appointment of a receiver for any such domestic society or branch thereof shall be entertained by any court in this State, unless the same is made by the attorney-general." But it will be seen from reading section 29 of the act that it was declared that "Nothing contained in this act shall be construed to affect or apply to grand or subordinate lodges of Masons, Odd Fellows," etc. It was argued that this exception was unconstitutional; but no exception was taken to that effect, and that question will not be considered. Therefore the act of 1914 by its terms does not apply to the defendant, the District Grand Lodge No. 18 of Georgia, Grand United Order of Odd Fellows, etc., which was chartered by the superior court of Fulton county. Being a fraternal benefit

association it could be so chartered, and did not have to be chartered by the Secretary of State as an insurance company, as contended.

The withdrawal of the charter granted by the National Order at Philadelphia did not have the effect of severing all connection between the order of Odd Fellows of Georgia under its private charter; and the right of the private corporation chartered by the superior court of Fulton county was not abrogated or forfeited as to its control and management of the assets of the order which had been acquired by its endowment plan.

We reach the conclusion, therefore, that the superior court, and not the insurance commissioner of the State, has jurisdiction in the instant case, a proper case having been alleged showing such jurisdictional facts.

2. Did the petition as amended make a case which would come within the jurisdiction of a court of equity? We have already held that the insurance commissioner of the State had no jurisdiction of the case. It was alleged, that the plaintiff and those joined with him were members of and held death benefit certificates in the order; that the domestic charter provided that the corporation should be governed by a board of directors who should manage and control its affairs; and that until January 15, 1916, when the "subcommittee of management," a corporation under the laws of Pennsylvania, suspended two of the officers of the domestic corporation and revoked the charter, dispensation, and warrant of the District Grand Lodge of Georgia, they were the officers having authority to control the affairs and assets of the corporation. This subcommittee also adopted an order reciting that "a state of anarchy" existed in the State of Georgia in the affairs of the defendant; it was further alleged that under the order of the committee of management there was no executive committee or officials of the chartered corporation to conserve its assets, alleged to be worth $600,000, two being suspended and three others refusing to act; and that there was no method provided for carrying on the affairs of the corporation; and that the only way the assets could be conserved and officially distributed or utilized, and thus keep the corporation a going concern, was for the superior court, acting as a court of equity, to assume jurisdiction, etc. Without reciting all the allegations, which can be seen by reference to the statement

38

of facts, we conclude that under the allegations of the petition as amended, which is sworn to, the evidence in the case, and all the answers of the defendants, this case is one peculiarly for a court of equity, and that the trial judge did not err in granting a temporary restraining order, and in appointing receivers to take charge of the assets of the corporation under direction of the court until officers could be legally elected to take charge of its affairs in accordance with law, and until the further order of the court, and in refusing to dismiss the petition.

3. The amended petition prays for a dissolution of the corporation, and a distribution of its assets. Under the decisions in the cases of *Croft* v. *Lumpkin Chestatee Mining Co.,* 61 *Ga.* 465, 467, *Gibson* v. *Thornton,* 107 *Ga.* 545 (33 S. E. 895), and *White* v. *Davis,* 134 *Ga.* 274 (67 S. E. 716), a court of equity in this State can not dissolve a corporation. The statute provides how corporations may be dissolved. Civil Code (1910), § 2238 et seq., and acts amendatory thereof. But for the purposes of conserving the assets of the corporation, which were alleged to be going waste, etc., and keep it a going concern until officers could be legally elected and qualified, and until the further order of the court, the case is one coming within the jurisdiction of a court of equity. Niblack on Accident Insurance and Benefit Societies, 226, §§ 110, 119; High on Receivers (4th ed.), § 293; 1 Bacon on Mut. Ben. Soc. § 60; 2 *Id.* § 479 (a).

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*