*H. C. Beasley,* contra.

---

## SMITH *v.* SATILLA PECAN ORCHARD & STOCK CO.

1. The verdict for the defendant was not authorized by the evidence, and the court erred in refusing a new trial.
2. The rejection of the evidence set out in the second division of the opinion will not require a new trial.
3. As a general rule, evidence of the wealth or worldly circumstances of a party is never admissible, except in cases where position or wealth is necessarily involved. The evidence in this case, to which objection was made, falls within the general rule.

4. The evidence set out in the fourth division of the opinion was irrelevant and should have been excluded.

5. The documentary evidence, consisting of certified copies of suits in another court between plaintiff and one of the defendants, was admissible as throwing light on the question of the consideration which plaintiff paid the defendant (Lawrence) for the stock in the defendant corporation.

6. The request to charge, as set out in the fourth ground of the motion for new trial, while embodying a correct principle of law, was not properly adjusted to the facts of the case, and the court did not err in refusing to give in charge the instruction as requested.

7. An averment in the motion for new trial, that "the court refused the timely written request of the plaintiff to charge the jury as follows," properly construed, means that the request was presented before the jury retired to consider their verdict.

No. 2576. JANUARY 13, 1922.

Equitable petition. Before Judge Summerall. Ware superior court. February 26, 1921.

J. A. Smith brought an equitable petition against Satilla Pecan Orchard and Stock Company, as a corporation, A. F. Moor, J. R. Lawrence, and J. E. T. Bowden, alleging in substance the following: Plaintiff is the owner of 75 shares of the capital stock of the Satilla Pecan Orchard & Stock Co. The other stockholders were Moor and Lawrence. The first-named defendant was incorporated with an authorized capital stock of $50,000 of the par value of $100 per share. Four hundred shares of the stock of the par value of $40,000 had been issued to Moor, and 100 shares of the par value of $10,000 had been issued to Lawrence. Moor had deeded to the corporation, in payment of his stock, a tract of 400 acres of land in Ware County, which was described in the petition. It was alleged that Lawrence had paid nothing for his stock, and that he had left the State, carrying with him the papers and records belonging to the corporation; and that Moor, denying the fact of the existence of the corporation or the conveyance of any land to it, had conveyed the land to the defendant Bowden, who had bought with notice of plaintiff's right. The allegations of the petition, with reference to Bowden's connection with the land, are that in August, 1918, plaintiff had filed a previous suit for the same purpose for which the present suit is filed, and had obtained an interlocutory injunction restraining Moor from selling the land, and that notwithstanding the injunction Moor had entered into a contract of sale with Bowden in November, 1919. On the trial of the former suit the plaintiff was nonsuited on December 3, 1919.

After the nonsuit, on December 6, 1919, Moor conveyed the land to Bowden. No suit was pending at the time of the conveyance to Bowden, and the present suit was filed February 16, 1920. When Moor sold the property (land) he took notes and a security deed payable to him as follows: $2250.00 due January 15, 1920, and $3000.00 due on the first day of January in each year of the years 1921, 1922, 1923, and 1924. It is necessary for the protection of the rights of plaintiff that a receiver be appointed to take charge of the property and the affairs of the corporation, to secure from Lawrence the books and records of the corporation, etc. The prayers of the petition were: (1) That a receiver be appointed to take charge of the corporation, the Satilla Pecan Orchard & Stock Co., and wind up its affairs and pay over its assets under the direction of the court. (2) That the receiver be instructed to take charge of the real property described in the petition as belonging to the corporation, and dispose of it for the benefit of the corporation, under the order of the court. (3) That the property be decreed to be the property of the Satilla Pecan Orchard & Stock Co. (4) That the receiver be instructed to take charge of and impound in court the notes and security deed given by Bowden to Moor, until the court decides to whom the title to the real estate belongs. (5) That the receiver be instructed to secure from Lawrence, or any other person having them in possession, all the corporate records of the Satilla Pecan Orchard & Stock Co. (6) That the receiver be instructed to collect from Lawrence, for the benefit of the corporation, the sum of $10,000 in payment of his stock subscription referred to in the petition. (7) That Lawrence be required to pay into court said sum for the benefit of the corporation. (8) That all the defendants be required to produce the evidence called for in the 37th paragraph of this petition (the minutes, stock-book, stock-certificates, stock-subscriptions of the Satilla Pecan Orchard & Stock Co., and the deed from Moor to the corporation, all in the possession of Lawrence or Moor). (9) That Bowden be restrained from selling, transferring, or encumbering the property described in the petition, and from paying any part of the purchase-price thereof until the further order of the court. (10) Until an interlocutory hearing is had, that a temporary restraining order issue, granting the relief prayed for in the last paragraph of the petition. (11) Such other and further relief

as to the court may seem meet and proper. (12) That process issue, etc.

The defendant Moor answered, that he owned for several years a valuable farm in Ware County, and that the plaintiff, Joel Smith, and the defendant, J. R. Lawrence, a professional stock salesman and promoter, had conspired to take away from Moor a large interest in his farm without paying him anything for it; that plaintiff and Lawrence had been acquaintances for many years, and had been engaged previously in stock-selling ventures; that plaintiff and Lawrence came to Waycross together, and Lawrence proposed to Moor to organize a corporation to take over and operate Moor's farm; that Lawrence proposed to borrow $500 from Smith, the plaintiff, and to secure him with fifteen shares of the stock of the corporation, which had been issued to Lawrence by the president and secretary and treasurer of the corporation, and the money was to be used for purposes of the organization of the corporation; and also to transfer to the plaintiff sixty shares of the stock of the corporation to secure plaintiff against any loss on account of an outstanding mortgage against Moor's farm; that the plaintiff gave Lawrence $50 personally and executed his note to Lawrence for $350, and only $100 of the proposed loan from the plaintiff was made available for corporation purposes; that Lawrence failed to keep any of his agreements with Moor, and Moor refused to have anything further to do with Lawrence or with the corporation; that Moor had never conveyed the land to the corporation, and refused to recognize as binding upon him any of the things that were done in connection with the organization of the corporation, because they were all done as part of the scheme developed in pursuance of the conspiracy between plaintiff and the defendant Lawrence to rob this defendant; that, several months after this, Moor had repudiated Lawrence and his scheme and the corporation; he learned that plaintiff claimed to own 75 shares of stock in the corporation and to have paid value therefor. Moor thereupon made an investigation and discovered that plaintiff had loaned or advanced to Lawrence $400 of the $500 which plaintiff had agreed to furnish the corporation; and that no consideration had passed from the plaintiff, binding upon the corporation or the defendant Moor as to the transfer of the 15 shares of stock, except $100 which plaintiff had made available for corporation purposes. This defendant also discovered

that the only consideration moving from the plaintiff for the 60 shares of stock transferred to him was the alleged settlement of a claim which plaintiff had against the defendant Lawrence, growing out of another stock-selling venture in which plaintiff and Lawrence had been engaged in 1912. Plaintiff claimed that Lawrence had sold certain stock owned by plaintiff and defendant jointly in the Universal Ice Co., and had failed to account to plaintiff for his part of the proceeds of the sale of the stock. Not only was the plaintiff's claim against Lawrence wholly worthless as a matter of fact because of the total insolvency of Lawrence known to plaintiff, but plaintiff's claim was also worthless as a matter of law; and plaintiff had been unable to secure a judgment in his favor upon the claim in any court. Plaintiff had filed a suit upon the claim in the superior court of Baldwin County against Lawrence, and had stricken from the suit all reference to the claim growing out of the joint stock-selling venture between plaintiff and Lawrence. Subsequently plaintiff had filed another suit in the superior court of Baldwin County against Lawrence, which suit was pending at the time plaintiff alleges he accepted the 60 shares of stock in settlement of his claim. The suit was tried, and verdict and judgment were rendered against plaintiff in February, 1918, many months after plaintiff claimed he accepted the stock in settlement of the claim involved in the suit. Subsequently, in June, 1918, plaintiff filed in the superior court of Baldwin County a motion to reinstate the suit, and subsequently withdrew the motion on August 19, 1918. This defendant says that if plaintiff ever had any claim against Lawrence, these facts show that plaintiff never settled or released it, and that no consideration passed from the plaintiff for the transfer of the 60 shares of stock referred to, and that if there ever existed such a settlement it was obtained by the fraud of Lawrence and is not binding upon the plaintiff, and the plaintiff still has his remedy against Lawrence; in any event the only consideration that plaintiff ever parted with, binding upon this defendant for any part of the 75 shares of stock transferred to plaintiff, was the $100 turned over by plaintiff for purposes of the organization, and this defendant has often tendered to plaintiff payment of the sum of $100 to reimburse him therefor. The defendant further answered, that he had entered into a contract with J. E. T. Bowden for the sale to Bowden of the land in controversy in Ware County, con-

ditioned upon this defendant being able to deliver good title thereto; that plaintiff's suit brought against the Satilla Pecan Orchard & Stock Co.'and Lawrence was nonsuited on December 3, 1919, and on December 6, 1919, this defendant conveyed his farm to Bowden and Mrs. Williams, as he had a perfect right to do, that the sale was made in good faith and without any purpose on the part of Bowden or this defendant to do injury to any legal right of plaintiff, etc.

The defendant Bowden also filed an answer neither admitting nor denying, for want of information or sufficient information, a large number of the paragraphs of the petition, denying other paragraphs, admitting a few immaterial ones, and averring that before he purchased the land in controversy he had an abstract of title made to the same, and, relying upon his attorney's certificate to the effect that the title to the property was clear, purchased it without knowledge or notice of the pendency of any suit or litigation affecting same.

On the trial of the case the jury returned a verdict for the defendant. A motion for new trial was overruled, and the plaintiff excepted. Other facts will sufficiently appear in the opinion.

*R. S. Wimberly,* for plaintiff.

*Parks, Reed & Garrett* and *Blalock, Redding & Stinson,* for defendants.

HILL, J. (After stating the foregoing facts.)

1. A demurrer to the petition was not filed, so far as the record discloses. Whether a court of equity has jurisdiction in this State to "wind up" and dissolve a corporation is not raised by the record. See, in this connection, *Daniel* v. *Jones,* 146 *Ga.* 583 (3), 594 (91 S. E. 665).

The petition alleges that the Satilla Pecan Orchard & Stock Co. was chartered by the laws of the State, and that in pursuance of such charter the corporation was organized by accepting the charter and electing officers for the same. It is alleged that Moor was elected president, and Lawrence was elected secretary and treasurer of the corporation, and that these officers issued stock in the corporation, and the certificates of stock were signed by them as president and secretary and treasurer respectively. On the trial of the case the jury returned a verdict for the defendant. The plaintiff in error insists that the verdict was contrary to the evidence and without evidence to support it. The petition alleged, among other

things, that the plaintiff loaned to Lawrence the sum of $500 and that $100 of the amount went into the corporation. This allegation of the petition is admitted by the answer of the defendant Moor, and the evidence of the plaintiff on the trial of the case was in substantial accord with the allegations in the petition in this regard. The defendant Moor did not testify, and offered no evidence to contradict the evidence as to the $100 being paid into the corporation. In view of the allegations contained in the petition, the answer of the defendant, and the evidence of the plaintiff, we are of the opinion that the verdict of the jury was not authorized by the evidence. Whether or not a court of equity can dissolve a corporation is not raised by the record; yet, under the allegations of the petition and the prayers thereof, including the one for general relief, we are of the opinion that the suit can be maintained for the purpose of preserving the property (which, there is evidence tending to show, went into the corporation) until other officers can be legally elected and qualified to conduct and manage the corporation as provided by law, it appearing from the petition and evidence in the case that the former officers have repudiated the corporation and are no longer acting as such. *Daniel* v. *Jones,* supra. The evidence is sufficient to authorize the conclusion that the charter was accepted, and that organization was effected under it. Where application is made for a charter in this State, and it is granted after having been applied for, acceptance of the charter may be presumed from such previous application. *City of Atlanta* v. *Gate City Gas Light Co.,* 71 *Ga.* 106.

2. The first ground of the amendment to the motion for new trial assigns error on the refusal of the court to allow the plaintiff to testify, in answer to the question as to what was done as to the charter of the Satilla Pecan Orchard & Stock Co. at the organization meeting, the following: "The charter was accepted," on the ground that the answer was a mere conclusion of the witness. We are of the opinion that this answer of the witness should not have been excluded for the reason assigned. It was not a mere conclusion, but the statement of a fact. In this connection see *City of Atlanta* v. *Gate City Gas Light Co.,* 71 *Ga.* 106. As the case is remanded for another hearing, on the ground that the verdict was not authorized by the evidence, a reversal of the judgment will not result upon this ground. There was other evidence in the case, to the

effect that a paper was exhibited at the organization meeting of the corporation, which was the charter " or was understood to be," and that one of the defendants, Moor, was elected president of the corporation, and Lawrence, another defendant, was elected secretary and treasurer of the corporation. We are of the opinion that the evidence other than that excluded was sufficient to authorize the conclusion that the charter was accepted, and that there was an organization under the charter.

3. Error is assigned because the court, over objection of plaintiff, permitted the defendant to bring out the following evidence from the witness J. A. Smith, the plaintiff: " I own a farm in Wilkinson County. I have a small farm in Tattnall. I hold stock in a bank. I was an officer of the Georgia Casualty Co. I was engaged in the mercantile business as an individual." The general rule is that evidence of the wealth or worldly circumstances of a party is never admissible, unless in those exceptional cases where position or wealth is necessarily involved. 10 R. C. L. 957, § 130. We are of the opinion that this evidence was irrelevant and ought to have been excluded.

4. On the trial of the case the court, over objection of the plaintiff that the evidence was irrelevant and immaterial and was offered to prejudice the jury, permitted the defendant to draw from the plaintiff, who was a witness in his own behalf, the following evidence: " My first business experience with Mr. Lawrence was when I bought some stock in the Universal Ice Co. I bought the stock from Mr. Lawrence, I think, and Mr. Stewart. I don't remember what year that was; and they undertook to sell that stock to me, and did sell some of it — I don't remember how much. Afterwards Mr. Lawrence came to me and told me that he knew of a party that had a good deal of stock for sale, and that if I would go in with him and buy it he would sell it and divide the proceeds with me. That was the only joint venture that we ever had. I do not know whether that was in 1912. I bought the stock, Mr. Lawrence and I bought jointly. It was 600 shares. I do not know as I know right now what I paid for it. I think it had a par value of $100 a share. It was an enterprise for making ice out of water without the distilling of it, is my recollection. It was not for the purpose of manufacturing ice machines, but for making ice. It made ice. I do not know how long it lasted. I went to the

plant several times in Atlanta, and I saw them making it. I do not know whether it lasted a year or not. I do not know that it was a stock-selling proposition and not an investment proposition; it looked to me like a pretty good venture making ice. The par value was $100 a share. I paid my part, but do not know whether Mr. Lawrence paid his or not. I do not remember the price. That was the block of stock that Mr. Lawrence told me that he could buy and he and I go in together and he would sell it. It may have been that we paid $6000, or I paid my half of it, $3000 for my half of it. I gave my note for $2250, and those notes were paid; and I paid $750 before that. There were 600 shares, Lawrence was to sell it for $50 a share, and his expenses to be deducted, and the profits to be divided. Before I found it out he sold nearly all of the stock, and I do not know what he did with the money." This evidence was likewise irrelevant, as it involved transactions between the plaintiff and Lawrence, and it had no bearing on the present case; but we reverse the judgment on the ground of the insufficiency of the evidence to support the verdict, and not upon the ground of allowing irrelevant and immaterial evidence as set out in this and the preceding ground of the motion for new trial.

5. The court, over the objection of the plaintiff that the evidence was immaterial and irrelevant and that its only purpose was to prejudice the jury, permitted the defendant to introduce certain documentary evidence, being certified copies of suits in Baldwin county between the plaintiff and the defendant Lawrence. We are of the opinion that this evidence was admissible in view of the pleadings in the case relative to the question of the consideration which plaintiff alleges that he paid for the stock in the corporation, the averment being that there was no real consideration moving from the plaintiff for the purchase of the stock.

6. The fourth special ground of the motion assigns error in the refusal by the court of a timely written request to charge the jury as follows: "Allegations in the petition relating to a written instrument executed by a defendant, or to his actings and doings, are not, without some explanation of his alleged ignorance concerning the same, properly met by a general averment that for want of sufficient information he is unable either to admit or deny the paragraphs of the petition in which such allegations are set forth. In such a case the allegations will be taken to be admitted by the de-

fendant." This request was in the exact language of headnote 1 to the case of *Angier* v. *Equitable B. & L. Assn.*, 109 *Ga.* 625 (35 S. E. 64) ; and while the request embodied a correct principle of law, yet the reference to "a written instrument executed by a defendant" made it improper to give the exact language as contained in the request. See Civil Code (1910), § 5637.

7. There is no merit in the contention that the assignment of error based upon the refusal of the trial court to give the charge did not show when the request was preferred. In this ground of the motion for new trial it is stated that "the court refused the timely written request of the plaintiff to charge the jury as follows." We think that this is a substantial compliance with the rule that it must appear when the request was preferred. If the request was "a timely written request," and this was certified by the court as being correct, then, properly construed, it means that the request was presented before the jury retired to consider their verdict. Civil Code (1910), § 6084.

*Judgment reversed. All the Justices concur.*