303 Ga. 358
FINAL COPY

S17G0832. CHRYSLER GROUP, LLC v. WALDEN et al.

GRANT, Justice.

We suspect that bench and bar have become accustomed to hearing the familiar recitation from this Court that Georgia's "new" Evidence Code has changed the rules. Although the new Evidence Code became law in January of 2013, meaning that it is not so very new in its application, cases can take some time to make their way to this Court on appeal. Accordingly, we still have work to do in interpreting the new Code, and this case gives us that opportunity. We hold today not that compensation evidence is always admissible to show the bias of an employee witness, or that it is never admissible, but that such evidence is subject to OCGA § 24-4-403 ("Rule 403") analysis weighing the evidence's unfair prejudice against its probative value. Because Chrysler did not raise a Rule 403 objection to the compensation evidence at issue in this appeal, we consider the question not under the ordinary abuse-of-discretion standard, but as a question of plain error. We conclude

that under the particular circumstances of this case—where the jury's evaluation of the bias and credibility of Chrysler's CEO were central to the allegations in the case because the CEO was alleged to have specifically interjected himself in a federal safety investigation to the detriment of the plaintiffs—we cannot say that the prejudicial effect of the evidence so far outweighed its probative value that its admission was clear and obvious reversible error. Accordingly, although we disagree with the rationale of the Court of Appeals, we ultimately affirm its judgment.

## I.

Construed to support the jury's verdict, see *Citizens & Southern Nat. Bank v. Haskins*, 254 Ga. 131, 136 (327 SE2d 192) (1985), the evidence shows that on March 6, 2012, Bryan Harrell was driving his pickup truck at more than 50 miles per hour when he rear-ended the 1999 Jeep in which four-year-old Remington Walden was a rear-seat passenger, with his aunt behind the wheel. The impact left Harrell and Remington's aunt unhurt, but fractured Remington's femur. The impact also caused the Jeep's rear-mounted gas tank to rupture and catch fire. Remington burned to death trying to escape; he lived for up to a minute as he burned, and witnesses heard him screaming.

Remington's parents ("Appellees") sued both Chrysler and Harrell for wrongful death.[1]

At trial, in March and April of 2015, Appellees challenged the Jeep's vehicle design, arguing that Chrysler should not have used a rear-mounted fuel tank. To avoid the operation of Georgia's ten-year statute of repose, Appellees were required to show not just that the gas tank was dangerous, but that Chrysler had acted with "willful, reckless, or wanton disregard for life or property." OCGA § 51-1-11. Evidence showed that Chrysler had long known that mounting a gas tank behind the rear axle was dangerous. Evidence also showed that Chrysler's placement of the gas tank behind the rear axle was contrary to industry trends, which favored placing tanks in front of the rear axle. In 2009, the federal Office of Defects Investigation ("ODI"), a division of the National Highway Traffic Safety Administration ("NHTSA"), had launched an engineering investigation and recommended a recall of several Jeep models with rear gas tanks, including the model at issue in this case. Appellees emphasized that after Chrysler Chief Executive Officer Sergio Marchionne met with two political appointees heading NHTSA and the

---

[1] Bryan Harrell pled guilty to vehicular homicide and is now in prison.

Department of Transportation ("DOT"), the model of Jeep at issue in this case was excluded from the recall.

Chrysler, on the other hand, presented evidence that the vehicle met or exceeded all applicable Federal Motor Vehicle Safety Standards and that many other vehicles of the era used rear-mounted fuel tanks. Marchionne testified, and denied any inappropriate political influence; he stressed that the NHTSA investigation of the alleged defect ultimately resulted in a conclusion that Chrysler's design did not pose an unreasonable risk to safety. Appellees' counsel pressed him to admit that he had persuaded NHTSA to resolve its investigation without finding a defect in order to avoid a drop in car sales, but Marchionne refused.

When questioning Chrysler Chief Operating Officer Mark Chernoby at trial, Appellees' counsel asked about CEO Marchionne's salary, bonus, and benefits; Marchionne himself was never questioned about his income and benefits. Chernoby detailed Marchionne's annual pay, stock options, and cash awards, which together totaled over $68 million. The trial court overruled Chrysler's repeated relevance and wealth-of-a-party objections to this line of questioning. Evidence was also admitted, this time without objection, to the fact that had Remington survived to adulthood he "could even have been the

chairman and CEO of a global automaker." Appellees' counsel referenced Marchionne's compensation again in closing, arguing, "what [Chrysler's counsel] said Remi's life was worth, Marchionne made 43 times as much in one year . . . . We ask you to return a verdict for the full value of Remington's life of at least $120 million . . . . That's less than two years of what Mr. Marchionne made just last year."

The jury determined that Chrysler acted with a reckless or wanton disregard for human life and failed to warn of the hazard that killed Remington. In returning its award of $120 million in wrongful death damages and $30 million in pain and suffering damages, the jury found Chrysler 99 percent at fault and Harrell 1 percent at fault. The trial court reduced these damages to $30 million and $10 million respectively when it denied Chrysler's motion for a new trial.

In its opinion affirming the trial court's order, the Court of Appeals approved the admission of Marchionne's compensation evidence, stating that "evidence of a witness's relationship to a party is always admissible" and that Marchionne's compensation "made the existence of [Marchionne's] bias in favor of Chrysler more probable." *Chrysler Group, LLC v. Walden*, 339 Ga. App. 733, 734, 743 (792 SE2d 754) (2016). The Court of Appeals also rejected

Chrysler's argument that the trial court had committed legal error by not comparing damage awards in prior similar cases, on the grounds that "no two cases are exactly alike." Id. at 750. This Court thereafter granted Chrysler's petition for certiorari, posing two questions: (1) Whether the Court of Appeals erred in determining that evidence of Chrysler's CEO's compensation was always admissible to show party bias under OCGA § 24-6-622? See also OCGA § 24-4-403; and (2) Whether the Court of Appeals erred in failing to consider prior awards in similar cases to determine whether the remitted award of damages was excessive under OCGA § 51-12-12?

## II.

The question at trial was who, if anyone, was liable for Remington Walden's death. As the case comes to us on appeal, however, the first question is about Georgia's Evidence Code, which was more fairly characterized as "new" at the time of the trial than it is now. In considering whether evidence of Marchionne's compensation was properly admitted, the Court of Appeals interpreted OCGA § 24-6-622, which addresses evidence relating to a witness's feelings about and relationship toward the parties, as a super-admissibility rule meaning, essentially, that any evidence at all of a witness's bias would always be permitted, no matter how prejudicial or otherwise

improper. Chrysler, on the other hand, relies primarily on the "longstanding common law rule banning party wealth" to assert that the evidence should have been barred. Neither is correct, but to understand why, we need to consider Georgia's new Evidence Code as a whole.

A. We first establish our parameters of interpretation. Georgia's new Evidence Code was modeled in large part on the Federal Rules of Evidence, "and when we consider the meaning of such provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." *Glenn v. State*, 302 Ga. 276, 280 (806 SE2d 564) (2017) (citation and punctuation omitted); see also *Davis v. State*, 299 Ga. 180, 185 (787 SE2d 221) (2016); *State v. Frost*, 297 Ga. 296, 299 (773 SE2d 700) (2015). Then, there are provisions that "were carried over from our old Evidence Code, and when courts consider the meaning of those provisions, they may rely on Georgia decisions under the old Code." *Frost*, 297 Ga. at 299 (citing *Bradshaw v. State*, 296 Ga. 650, 654 (769 SE2d 892) (2015)).[2]

---

[2] Although none are at issue in this case, some other provisions are original creations of the new Evidence Code, which we interpret using "the usual principles that inform our consideration of statutory meaning." *Frost*, 297 Ga. at 299.

With this framework in mind, we consider the statutory text. Three rules provide a backdrop for Georgia's new Evidence Code. First, Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. Rule 402 then sets a broad standard of admissibility for evidence deemed relevant: "All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules[.]" OCGA § 24-4-402. In contrast, "[e]vidence which is not relevant shall not be admissible." Id. Rule 403 guards against unfair prejudice, mandating that judges consider the balance between how useful or "probative" the evidence is and how likely it is that the evidence will cause a factfinder to decide a case on the wrong grounds: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." OCGA § 24-4-403. Rule 403 offers crucial protections to litigants but "the exclusion of evidence under Rule 403 'is an extraordinary remedy which should be used only sparingly.'" *Olds v. State*, 299 Ga. 65, 70 (786 SE2d 633) (2016) (citations omitted).

The statutory interaction between Rule 403 and the relevancy rules demonstrates at the outset that not all evidence that "shall" be admissible according the Rules may always be entered in every instance; that rule specifically notes that relevant evidence is only admissible if it is not subject to constitutional requirements or other limitations. By standardizing rules concerning both the presumptive admissibility of relevant evidence and the judicial exclusion of certain otherwise admissible evidence, Rules 401, 402, and 403 overlay the entire Evidence Code, and are generally applicable to all evidence that a party seeks to present. See, e.g., *State v. McPherson*, 341 Ga. App. 871, 873-874 & n. 8 (800 SE2d 389) (2017) (citing *United States v. McGarity*, 669 F3d 1218, 1244 (V) (B), n. 32 (11th Cir. 2012) for the proposition that evidence admitted under Rule 414 (a) must also satisfy Rule 403); cf. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579, 587 (113 SCt 2786, 125 LE2d 469) (1993) (when interpreting the Federal Rules of Evidence, "Rule 402 provides the baseline").

But again, not all of our new Evidence Code is "new." One "holdover" provision from the old set of rules with no federal counterpart is Rule 622, which was applied by the Court of Appeals to uphold the admission of the compensation evidence in this case. See OCGA § 24-6-622. The Court of

Appeals held that "any 'concerns regarding prejudice in this instance must yield to the statutory mandate'" of Rule 622 because "'[t]he state of a witness's feelings towards the parties and his relationship to them *may always be proved for the consideration of the jury.*'" *Chrysler Group*, 339 Ga. App. at 743 (quoting *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 593 (452 SE2d 159) (1994) (quoting former OCGA § 24-9-68) (emphasis in original). Although that quote is accurate, the contention that it supports is incorrect. Rule 622 indeed provides that "[t]he state of a witness's feelings towards the parties and the witness's relationship to the parties may always be proved for the consideration of the jury." But concerns regarding prejudice need not yield to our Evidence Code's so-called "statutory mandate" regarding evidence of bias; to the contrary, the Evidence Code specifically provides that for some evidence, unfair prejudice may outweigh probative value. See OCGA 24-4-403. Although relevant evidence, including a witness's bias, "shall be *admissible,*" under the Rules, that evidence is not automatically *admitted.* See *Marcus & Millichap Investment Svcs. of Chicago v. Sekulovski*, 639 F3d 301, 307 (7th Cir. 2011) ("'Proof of bias' is not a talismanic phrase that extinguishes the trial court's duty to evaluate and possibly exclude evidence otherwise violative of the Rules.").

So we must determine what impact Rule 622 has on the evidentiary analysis in this case—in other words, whether there is any reason to conclude that Rule 622 somehow falls outside the bounds of Rule 403's unfair prejudice limitations. Because the Rule is a holdover from our old Evidence Code, we look to Georgia cases decided under the former version of that rule—OCGA § 24-9-68—for guidance. The short summary is that Rule 622 does not move the needle to automatically admit evidence in spite of any prejudicial effect it may have. Even before the new Evidence Code standardized our consideration of prejudice, Rule 622 did not function as a rule of super-admissibility. For example, this Court upheld the exclusion of evidence that concerned a witness's credibility and bias but also violated the general prohibition against eliciting bolstering testimony from a party's own witness because OCGA § 24-9-68 "must not be read in a vacuum, but in the context of other rules relating to witnesses and evidence." *Blige v. State*, 264 Ga. 166, 167 (441 SE2d 752) (1994). The Court of Appeals held along the same lines that OCGA § 24-9-68 established that bias evidence "generally is admissible," but that the statute "should be considered in pari materia" with the relevancy statute: "[E]ven if the testimony sought to be admitted does relate to the feelings a witness has toward a party, if that particular feeling would have no relevance to the

questions being tried by the jury, then such evidence may be excluded in the sound discretion of the trial court." *Lockett v. State*, 217 Ga. App. 328, 330 (457 SE2d 579) (1995).

Proper applications of OCGA § 24-9-68 included the ability to question an opposing party's expert witness about how often he had been hired by the counsel in the case and how much he had been paid, *Whitner v. State*, 276 Ga. 742, 745 (584 SE2d 247) (2003), disapproved on other grounds by *Ledford v. State*, 289 Ga. 70, 84 (709 SE2d 239) (2011), to question witnesses about reduction in prison time in exchange for cooperating with the State, *State v. Vogleson*, 275 Ga. 637, 639 (571 SE2d 752) (2002), and to elicit evidence that an employee witness received a promotion and pay increase as a reward for favorable testimony to defendant, *McNeely v. Wal-Mart Stores, Inc.*, 246 Ga. App. 852, 853 (542 SE2d 575) (2000). Rule 622, therefore, establishes that a witness's bias is always a legitimate issue to be proved, but not that any evidence offered to show bias is always admissible no matter how prejudicial or irrelevant to the issue being tried. The Court of Appeals's suggestion to the contrary below and in the case it relied on, *Orkin*, 215 Ga. App. 587, is wrong, and is disapproved. We cannot solve the question of the compensation evidence on that basis.

Chrysler takes a different approach, but its argument also misapprehends the new Evidence Code. Chrysler insists that the trial court should have blocked evidence of Marchionne's compensation by applying the general rule of Georgia's common law that "evidence of the wealth or worldly circumstances of a party is never admissible, unless in those exceptional cases where position or wealth is necessarily involved." *Smith v. Satilla Pecan Orchard & Stock Co.*, 152 Ga. 538, 545 (110 SE 303) (1922). But the problem with Chrysler's argument is twofold: First, the "longstanding common law rule" on party wealth does not apply precisely because it is a longstanding common law rule that has been abrogated by Georgia's current evidence statutes; and second, even if that common law rule had survived the rewrite of the Evidence Code, it would not apply to evidence of Marchionne's compensation because he was not a party.

The new Evidence Code addresses old common law rules in OCGA § 24-1-2 (e), which provides that "[e]xcept as modified by statute, the common law as expounded by Georgia courts shall continue to be applied to the admission and exclusion of evidence and to procedures at trial." The converse of that point is also true; where the new Evidence Code does modify a common law evidentiary rule, the old rule does *not* continue to apply. If the outcome

remains the same, it is by "happenstance" rather than design. *Davis*, 299 Ga. at 192.

When we consider our prior decisions applying Georgia's common law rule barring party-wealth evidence, we can see that it has indeed been modified by passage of the new Evidence Code. The old rule, by its very language, permitted party-wealth evidence "where position or wealth [was] *necessarily involved*," and was, at its core, a rule of relevancy. See *Satilla*, 152 Ga. at 545 (emphasis supplied). And this Court repeatedly framed our consideration of the rule in terms of relevance, or lack thereof: "We are of the opinion that this evidence was *irrelevant* and ought to have been excluded." Id. (emphasis supplied); see also *Bailey v. Edmundson*, 280 Ga. 528, 534 (630 SE2d 396) (2006) ("[T]estimony regarding the amount of attorney's fees and their effect on [party's] current and post-trial financial condition was *irrelevant*.") (emphasis supplied); *Brackin v. Brackin*, 222 Ga. 226, 229 (149 SE2d 485) (1966) (quoting *Satilla* in holding that court erred in admitting evidence of party's financial status because it "was *not related* to the issue before the court") (emphasis supplied); *Northwestern University v. Crisp*, 211 Ga. 636, 641 (88 SE2d 26) (1955) (citing *Satilla* and finding "[w]e are wholly unable to perceive the *relevancy* of such testimony to any issue made in this case")

(emphasis supplied). In fact, Chrysler itself emphasized relevance when it objected on the grounds of party wealth, an objection it renewed several times. See, e.g., Trial Transcript at 1772 ("[W]e have a motion in limine on the wealth, size, and resources, and we think this . . . applies to this as well."), 1774 ("irrelevant"), 1779 ("I just want to perfect my prior objection . . . once again for the record we object on relevancy."), 1780 ("[W]e renew our objection."), and 1781 ("[O]nce again renew the objection.").

Accordingly, because the new Evidence Code borrowed federal language for its generally-applicable relevance rules—Rules 401 and 402—Georgia's common law rule relating to the relevance of party-wealth evidence is no longer independently in force. We recognized a similar principle in *State v. Jones*, 297 Ga. 156, 159 n.2 (773 SE2d 170) (2015) when we cautioned that "[a]lthough the Court of Appeals recognized the applicability of the new Georgia Evidence Code, it overlooked OCGA § 24-4-401's definition of 'relevant evidence' and mistakenly applied a definition applicable in cases tried prior to the new Code's effective date." See also *Glenn v. State*, 302 Ga. 276, 279-280 (806 SE2d 564) (2017) (relying on federal precedent, in lieu of Georgia common law, in applying Georgia's new Evidence Rule 701 (a) regarding permissible scope of lay witness testimony). Chrysler itself seems

to recognize that the new rules overlay the old, quoting Rules 402 and 403 in arguing that "[t]he longstanding common-law prohibition on wealth evidence is a specific application of principles in the Georgia Evidence Code." But the new Evidence Code does not work in conjunction with the old evidence rules when the two cover the same territory—it replaces them.

Because the common law party wealth rule was itself a rule of relevance, and because there is no specific exclusionary rule in the new Evidence Code carrying forward the common law's general exclusionary rule for that type of evidence, Georgia courts must consider party-wealth evidence under the parameters of the new Evidence Code. This is yet another example of the "new evidence world" in which we live. *Davis v. State*, 299 Ga. at 192.

In any event, the common law evidentiary rule against party-wealth evidence would not settle the issue before us for a simple reason: Marchionne is not a party. See Black's Law Dictionary (10th ed. 2014) (defining "party" as "[o]ne by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment; litigant". The Court of Appeals has recognized that "great caution should be exercised by the court in disregarding the corporate entity" in holding that even the sole managing

member of a limited liability company "is considered separate from the company and is not a proper party to a proceeding by or against a limited liability company." *Milk v. Total Pay and HR Solutions, Inc.*, 280 Ga. App. 449, 451 (634 SE2d 208) (2006) (citations and punctuation omitted). And in any event, the considerations of prejudice that surround party wealth are entirely different than those that surround witness bias. Moreover, Chrysler identifies no case where we have applied the rule as it says that we should do, to bar evidence of employee compensation as derivative of party wealth. See, e.g., *Bailey*, 280 Ga. at 534 (applying rule to testimony regarding party's ability to pay attorney fees); *Brackin*, 222 Ga. at 229 (applying rule to evidence of party's real estate holdings and interests in various corporations); *Crisp*, 211 Ga. at 641 (applying rule to testimony of party's assets); *Satilla*, 152 Ga. at 545 (applying rule to testimony of party's real estate and stock holdings and business dealings).[3] We decline to further extend a rule that is no longer a rule.

---

[3] Chrysler's argument that a 1977 case extended the party-wealth rule's application to witnesses is misplaced. See *Reed v. State*, 238 Ga. 457, 459 (233 SE2d 369) (1977). To begin, the witness in that case was not remotely in the same posture as the witness here; in *Reed*, the defendant wished to question a defense witness regarding his income. Id. Moreover, because the opinion provides no analysis whatsoever, and has not been cited since to support the proposition that a blanket ban should be applied to evidence of witness wealth, we do not endorse that new interpretation today.

This is not to say that party-wealth evidence is now admissible in Georgia—it is frankly quite difficult to see how it would be relevant in nearly any case, at least not involving punitive damages. As the Tenth Circuit has said, "Comments on the wealth of a party have repeatedly and unequivocally been held highly prejudicial, and often alone have warranted reversal." *Whittenburg v. Werner Enterprises Inc.*, 561 F3d 1122, 1130 n. 1 (10th Cir. 2009). Indeed, federal courts applying Federal Rules of Evidence 401 and 402 are in agreement that in cases where punitive damages are not in issue, evidence of a party's wealth or financial status is generally inadmissible unless directly relevant to issues in the case. *United States v. Bradley*, 644 F3d 1213, 1270-1272 (11th Cir. 2011); *United States v. Bill Harbert Intl. Constr., Inc.*, 608 F3d 871, 896-898 (D.C. Cir. 2010); *United States v. Barber*, 147 Fed. Appx. 941, 945 (11th Cir. 2005); *Reilly v. NatWest Markets Group Inc.*, 181 F3d 253, 266 (2d Cir. 1999); *United States v. Fuesting*, 845 F2d 664, 673 (7th Cir. 1988). The generality of the new rules on relevance and prejudice does not leave them toothless against the particular problem of party-wealth evidence.

Nor does this case establish that the kind of compensation evidence at issue here always comes in—it often doesn't. But the proper objection is made

under Rule 403, and must be based on unfair prejudice outweighing probative value, not on a blanket ban. This is a fact-specific analysis. See *Bradley*, 644 F3d at 1271 ("[O]ur determination of whether the evidence is relevant under Federal Rule of Evidence 401, or more prejudicial than probative under Rule 403, must turn on the facts of each specific case."). That fact-bound analysis, moreover, will lead to different outcomes in different cases; because the inquiry into these evidentiary rulings is so fact-specific, no one case "controls" the end result in every case to follow, but we can see how federal courts have considered these issues and apply Georgia law accordingly. The Eleventh Circuit, for example, addressed a similar issue in *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F2d 1467 (11th Cir. 1992). In that case, BankAtlantic argued that evidence of its chairman's income should have been excluded because it was irrelevant and highly prejudicial in violation of Federal Rules of Evidence 402 and 403. Id. at 1474. But the Eleventh Circuit concluded that evidence of the chairman's income was relevant to theories of Paine Webber's case and to show the chairman's bias or interest as a witness in the outcome of the case. Id. at 1474-1475. The Eleventh Circuit also found that although some of Paine Webber's arguments regarding the chairman's wealth "could be viewed as improper," because Paine Webber did not

introduce any evidence in violation of a ruling by the trial court or reference matters outside the record, the district court did not abuse its discretion in admitting the evidence of the non-party chairman's income. Id.

We also note that despite a relative lack of decisions from the federal circuit courts addressing the specific issue before us, multiple federal district courts *have* dealt with the issue, and although these cases are not binding, their analyses highlight the varying outcomes that may be appropriate depending on the facts of a case. Some have allowed financial evidence as relevant to show the bias of a witness. See, e.g., *Avondale Mills, Inc. v. Norfolk S. Corp.*, No. 1:05-2817-MBS, 2008 WL 6953958, at *1 (D.S.C. Jan. 16, 2008) (allowing evidence of defendants' executives' compensation "for the limited purpose of showing bias"); see also *Mendenhall v. American Booksellers Assn.*, No. 88 Civ. 8998 (KTD), 1990 WL 422415, at *1-2 (S.D. N.Y. May 1, 1990) (plaintiff permitted to question defendant's chairman, at deposition, regarding compensation and retirement benefits because they were "germane to the loyalty he may feel toward the organization and hence to potential bias. Furthermore, it is the magnitude and not merely the fact of such compensation that would bear on credibility").

Others have banned such evidence as too prejudicial under Rule 403. See, e.g., *L-3 Communications Corp. v. OSI Systems, Inc.*, No. 02 Civ. 9144 (PAC), 2006 WL 988143, at \*6 (S.D. N.Y. Apr. 13, 2006) (excluding evidence of wealth and lifestyle of defendant's CEO and witness as "clearly irrelevant and . . . unfairly prejudicial" unless defendant "open[ed] the door") (citation omitted). But both sets of courts have engaged with the facts of the particular case at hand to determine whether the evidence was relevant and to guard against undue prejudice. Some of the party-wealth cases may also be instructive in the witness-compensation inquiry. See, e.g., *Whittenburg*, 561 F3d at 1130 n.1. (disapproving of "rais[ing] the specter of [an opposing party's] wealth by alluding" to vast amounts of money spent by the party).

When evaluating the trial court's admission of the compensation evidence in this case, we ordinarily would determine whether, under the facts of the case, the trial court had abused its discretion. *Cooper Tire & Rubber Co. v. Crosby*, 273 Ga. 454, 456-457 (543 SE2d 21) (2001); see *Anglin v. State*, 302 Ga. 333, 335 (806 SE2d 573) (2017). But here, when the compensation evidence was admitted, Chrysler made only a general objection, arguing that its pretrial motion in limine to exclude evidence of *Chrysler's* wealth also applied to evidence of *Marchionne's* compensation, and also objecting that the

compensation evidence was irrelevant. We cannot say that it was an abuse of discretion for the trial court to reject Chrysler's objections on the grounds that it raised at trial; as we have explained, the party-wealth rule is not applicable for a number of reasons, and under the particular facts of this case Marchionne's salary meets the (low) standard for relevance because his bias and credibility were central to Appellees' theory of the case.

Chrysler did not specify Rule 403 or mention unfair prejudice as grounds for its objections to evidence of Marchionne's compensation. Instead, it referenced relevance and referred back to its pretrial motion on party wealth. That motion did invoke Rule 403, but the 403 analysis of party wealth is entirely different than that of witness bias. In the former, the concern is the relevance of the evidence to the case and the risk of bias against the wealthy party on the part of the jury. For the latter, the question the trial court must consider is whether, even considering Rule 622's admonition regarding the admissibility of evidence of witness bias, the evidence in question is unfairly prejudicial to the objecting party.

B. For that reason, we can only analyze whether the admission of this evidence constituted plain error, not whether it was an "ordinary" abuse of discretion. This is yet another innovation of our new Evidence Code—before,

the issue would have been waived entirely.  See *Hall v. State*, 292 Ga. 701, 702 (743 SE2d 6) (2013); *Cotton v. State*, 279 Ga. 358, 359 (613 SE2d 628) (2005). Now, the plain error provision establishes that "[n]othing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court." OCGA § 24-1-103 (d); *Davis v. State*, 302 Ga. 576, 581 (805 SE2d 859) (2017); cf. *Christopher v. Cutter Labs.*, 53 F3d 1184, 1192 (11th Cir. 1995) ("Absent an objection, we can review the challenged evidence only for plain error."); *Hanson v. Waller*, 888 F2d 806, 813 (11th Cir. 1989) ("[W]here a party fails to object in a timely manner . . . objection to the alleged error will be deemed waived unless it constitutes plain error.").  Plain error also applies where, as here, a party objected to evidence but did so on a different ground. See *Davis*, 302 Ga. at 579-580; cf. *Faust v. State*, 302 Ga. 211, 216 (805 SE2d 826) (2017) (because appellant objected to jury charge "only on a different ground from that which he now raises on appeal, appellate review is precluded unless the robbery instruction amounted to plain error which affected his substantial rights").

Although this Court has thus far applied the plain error standard only in criminal cases, our Evidence Code does not distinguish between the two, and

so it also applies in the civil arena.[4]   See OCGA §§ 24-1-103 (d); 24-1-2 (a). To meet the plain error standard, an appellant must show an error or defect that has not been "affirmatively waived" by the appellant, that is "clear or obvious," and that "affected the appellant's substantial rights" by "affect[ing] the outcome of the trial court proceedings"; if these three requirements are satisfied, we have the discretion to remedy the error but should do so only if

---

[4] It is not a simple task to unpack the development of plain error review in federal courts and in this State, but the issue merits some discussion here.  Federal courts sometimes explain that plain error review is derived from Federal Rule of Criminal Procedure 52 (b), which codified the federal common law in 1944, and provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  See *United States v. Olano*, 507 U. S. 725 (113 SCt 1770, 123 LE2d 508) (1993).  We have adopted the same four-pronged standard for plain-error review that federal courts apply in criminal cases, first for jury instructions under OCGA § 17-8-58 (b), *State v. Kelly*, 290 Ga. 29 (718 SE2d 232) (2011), and then for evidentiary issues under OCGA § 24-1-103.  *Gates v. State*, 298 Ga. 324 (781 SE2d 772) (2016).  Since 1972, the federal rules have recognized that courts have the authority to perform plain error review in civil cases.  See Fed. R. Evid. 103.  But federal courts have also been clear that plain error review has only "limited application" in the civil context and is "an extraordinary measure."  *Walker v. Groot*, 867 F3d 799, 802 (7th Cir. 2017) (citations and punctuation omitted); see also *Burch v. P.J. Cheese, Inc.*, 861 F3d 1338, 1352 (11th Cir. 2017) ("Under the civil plain error standard, 'we will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice.'") (citation omitted); *Ledford v. Peeples*, 657 F3d 1222, 1258 (11th Cir. 2011) (plain error doctrine "rarely applies in civil cases").  In Georgia, because our invocation of plain error review is based on a statutory provision that applies to both civil and criminal cases, we see no basis for applying plain error only in the criminal category of cases.  See OCGA § 24-1-103. We note, however, that we share the view that "[a]lthough the language is the same, the context of civil litigation often differs from the context of criminal prosecution; actual application of the plain-error standard takes account of the differences." Fed. R. Civ. P. 51 (d) advisory committee's note to 2003 amendment.   In short, although we decline to establish a specific boundary in this case, because civil cases do not ordinarily invoke the violation of a constitutional right or the denial of liberty it is far less likely that plain error will be identified in the civil context.

the error "seriously affect(s) the fairness, integrity or public reputation of judicial proceedings." *Gates v. State*, 298 Ga. 324, 327 (781 SE2d 772) (2016) (citations and punctuation omitted). Chrysler, although it does not characterize its argument as resting wholly on Rule 403, argues on appeal that evidence of its executive's compensation was both irrelevant and unduly prejudicial. But considering the issue under the plain error standard, we cannot conclude that under the facts of this case the prejudicial effect of the compensation evidence (which was admittedly significant) so dramatically outweighed its probative value that the decision below must be reversed.[5] Here, unlike in the mine run of cases, the actions of the CEO were directly relevant to the claims at hand, and his credibility (or lack thereof) was central to the question before the jury.

That is not to say that we would make the same decision de novo, or even necessarily under the ordinary "abuse of discretion" standard of review. But the exclusion of evidence under Rule 403 is "an extraordinary remedy which should be used only sparingly" and "[t]he application of the Rule 403 test is a matter committed principally to the discretion of the trial courts," *Smart v. State*, 299 Ga. 414, 418 (788 SE2d 442) (2016) (citation and punctuation

---

[5] We can locate no federal cases finding the federal equivalent of plain error for admission of this type of evidence, although we again note that under federal law plain error typically is not found in civil cases.

omitted).  Under that standard, and in this case, we cannot say there was such a clear or obvious error in admitting evidence of Marchionne's compensation under the facts of this case that the "fairness, integrity, or public reputation" of the proceedings was called into question.

In the end, we hold that determinations of whether a non-party witness's compensation, like other wealth evidence, "is relevant under [Georgia] Rule of Evidence 401, or more prejudicial than probative under Rule 403, must turn on the facts of each specific case." *Bradley*, 644 F3d at 1271.  We disapprove of interpreting the Court of Appeals's opinion as allowing all employee witnesses to be questioned in every case about their or their colleagues' compensation. Rather, witnesses' compensation *may* be relevant and admissible to show bias under Rules 401, 402, and 622, or for other permissible purposes, depending on the facts of the case.  But we also emphasize that such evidence, like other evidence, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," under Rule 403.  Whether evidence of the employee's income directly implicates a party's wealth, so as to render its admission unduly prejudicial, is a factor to be considered by the trial court in determining the evidence's admissibility. Courts should be mindful that "the presentation of evidence of a defendant's net worth creates the potential that

juries will use their verdicts to express biases against big businesses, particularly those without strong local presences." *Honda Motor Co. v. Oberg*, 512 U. S. 415, 432 (114 SCt 2331, 129 LE2d 336) (1994).[6]

For all these reasons, we affirm the judgment of the Court of Appeals.

Judgment affirmed. All the Justices concur, except Boggs and Peterson, JJ., who concur specially in Division II B, and Hines, C. J., Hunstein and Blackwell, JJ., who concur in judgment only in Division II B.

---

[6] We also directed the parties to brief a question regarding the Court of Appeals's review of the remitted judgment. Upon review of the record and full briefing, however, we conclude that this issue does not warrant our review.

MELTON, Presiding Justice, concurring.

Even when considered in light of the concurrence from Justice Peterson, I agree with the analysis in the majority opinion. I write separately only to emphasize that, while this case was certainly easier to decide under a plain error standard, the outcome here could very well have been different had Chrysler made the proper Rule 403 objection below and this case had been evaluated under a normal abuse of discretion standard. In this regard, I would caution the bench and bar to be wary of the use of employee compensation evidence as a means of showing a witness' bias, because such evidence can be highly inflammatory and lead to unfair prejudice, and because there are other ways to show an employee's potential bias without referencing their actual income.

For example, the fact that a witness is employed full time with a particular company, alone, could show that the witness may be biased in favor of that place of employment. The employee's source of income, rather than the level of income itself, may be more relevant to one's potential bias in a particular case. However, a focus on the employee's income may show not only the witness' bias, but may bias the *jury* against an employer to use the

employee's income as a questionable basis for calculating compensatory, rather than punitive, damages in a case. Indeed, the plaintiffs specifically *encouraged* the jury to use Chrysler's CEO's income as a reference point for calculating its compensatory damages award. In order to reduce the risk of such abuses occurring, in those rare cases where employee compensation may be relevant to an issue presented at trial, I would encourage trial courts to use limiting instructions as an additional tool to blunt any potential prejudice and to direct the jury's attention to the limited purpose for which the evidence should be considered.

PETERSON, Justice, concurring specially in part.

I concur fully in Divisions I and II A of the majority opinion. Although I concur in the judgment in Division II B, I write separately because I do not agree with all that is said in that division.

I agree with the actual holding of the majority's opinion. Properly understood, that holding has three parts: (1) as explained in Division II A, the trial court's admission of evidence of Chrysler CEO Sergio Marchionne's compensation ought to have been evaluated under Rule 403; (2) as explained in Division II B, because Chrysler did not object on that basis, admission of that evidence is reviewable only for plain error; and (3) as further explained in Division II B, the admission of that evidence is not reversible under that standard because even if admission of the evidence were error, any error was not obvious. I agree with each of those premises, and they are all that is necessary to decide the question this case presents. As such, "the cardinal principle of judicial restraint — if it is not necessary to decide more, it is necessary not to decide more — counsels us to go no further." Moore v. McKinney, 335 Ga. App. 855, 857 (783 SE2d 373) (2016) (quoting PDK Labs.

Inc. v. U.S. Drug Enforcement Admin., 362 F3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring)) (punctuation omitted). But Division II B does not stop there; it goes much further (mostly in dicta), and often with sweeping language that travels far beyond this case. Respectfully, I cannot go along.

I am authorized to state that Justice Boggs joins in this concurrence.

Decided March 15, 2018.

Certiorari to the Court of Appeals of Georgia — 339 Ga. App. 733.

Swift, Currie, McGhee & Hiers, Terry O. Brantley, Mary D. Owens, Bradley S. Wolff; Kirbo & Kendrick, Bruce W. Kirbo, Jr.; Gibson, Dunn & Crutcher, Thomas H. Dupree, Jr., Rajiv Mohan, for appellant.

Seacrest, Karesh, Tate & Bicknese, Karsten Bicknese, Robert H. Betts; Butler, Wooten, Cheely & Peak, James E. Butler, Jr., David T. Rohwedder; Bondurant, Mixson & Elmore, Michael B. Terry, Frank M. Lowrey IV; Butler Tobin, James E. Butler III; Butler, Wooten, Overby, Fryhofer, Leigh M. May; Floyd & Kendrick, George C. Floyd; Cathy Cox, for appellees.

Huff, Powell & Bailey, Michael R. Boorman; Alston & Bird, Brian D. Boone, Kyle G. A. Wallace, Caroline M. Rawls, William H. Jordan; Hunter Maclean Exley & Dunn, Christopher R. Jordan; Hawkins Parnell Thackston & Young, Martin A. Levinson; Drew Eckl & Farnham, Garret W. Meader; Dentons US, J. Randolph Evans, Anthony W. Morris; Matthew B. Stoddard; Burr & Forman, Ashby K. Fox, Forrest S. Latta, Louis G. Fiorilla; D. Victor Reynolds, District Attorney, John S. Melvin, Michael S. Carlson, John R. Edwards, Amelia G. Pray, Assistant District Attorneys, amici curiae.